## In re H. BATTERMAN CO.

### In re BEDFORD CO.

(Circuit Court of Appeals, Second Circuit. March 14, 1916.)

### Nos. 75, 76.

BANKRUPTCY ☞223—REFEREE—COMPENSATION—COMPOSITION WITH CREDITORS.

Where a bankrupt's composition with its creditors was confirmed on the basis of a payment of 65 per cent. in cash, and thereafter certain creditors agreed to waive deposit of the cash required to pay their claims, and later waived payment of their claims in consideration of the payment of 15 per cent. and notes for 85 per cent. thereof executed by another corporation, it must be presumed that some consideration moved from the bankrupt to the other corporation, and from it to the creditors, which induced them to accept the notes, and the referee is entitled to his commission on the amount of those claims which would have been paid in cash if the creditors had not waived payment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 888–894; Dec. Dig. ☞223.]

Petitions to Revise Appeals from the District Court of the United States for the Eastern District of New York.

Separate involuntary proceedings in bankruptcy against the H. Batterman Company and against the Bedford Company were argued and decided together. The bankrupt's petition to revise the order of the District Court fixing the compensation of the referee. Order affirmed.

These two cases involve precisely the same questions and were by agreement of the parties to be argued and decided together. In the following opinion the Batterman Company only will be referred to.

White & Case, of New York City (J. M. Hartfield, of New York City, of counsel), for appellants.

O. A. Lewis, of Brooklyn (Alexander M. Birnbaum, of Brooklyn, on the brief), for appellees.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. June 26, 1914, involuntary proceedings in bankruptcy were begun against the H. Batterman Company, whose property was in the hands of receivers appointed in an equity suit in the United States District Court for the Eastern District of New York. February 4, 1915, the alleged bankrupt filed its schedule of assets and liabilities and offered a composition of 65 per cent. in cash to its creditors. February 26th and 27th, at meetings of the creditors, this offer was accepted by a majority in number and amount. March 3d a body

of the creditors known as the "note creditors," holding notes of the alleged bankrupt to the order of the H. B. Claflin Company and indorsed by it, waived in writing the deposit of cash which the court required under section 12b of the Bankruptcy Act. On the same day by another instrument they agreed to waive payment of their claims by the alleged bankrupt, upon confirmation of the composition. March 8th the referee reported to the court in favor of confirming the composition and annexed to his report a schedule showing the amount due to each creditor, the percentage he was entitled to receive under the composition and the referee's commissions calculated at one-half of one per cent. thereon as fixed by section 40a of the Bankruptcy Act. March 9th the agreements of the note creditors dated March 3d were filed.

April 20th the District Judge confirmed the composition and directed the alleged bankrupt to deposit enough cash with the clerk of the court to cover the costs of the proceedings and, the claims of creditors who had not waived the deposit of 65 per cent. in cash. The note creditors were parties to the plan of reorganization of the H. B. Claflin Company, and under it exchanged their notes for 15 per cent. of the same in cash paid by the H. B. Claflin Corporation and the balance of 85 per cent. in notes of the Mercantile Stores Corporation. June 15th by an order resettled October 18th the fees of the referee were fixed at $3,-651.91, being one-half of 1 per cent. on all of the claims proved or allowed.

The question to be determined is whether the referee is entitled to commissions on the claims of the note creditors who have released the alleged bankrupt. If there had been only a waiver of deposit, and the alleged bankrupt had failed to pay the 65 per cent. in cash, we think the referee could not for that reason be denied his commissions. The money, though not paid, was "to be paid," within the meaning of the act, and the creditors would take the risk of waiving the deposit with the court. Likewise he would not be prejudiced if the creditors had accepted, instead of cash, notes of the alleged bankrupt in settlement which were never paid, or if they had released the alleged bankrupt in consideration of receiving notes or property from some other person. Now, without knowing the precise considerations which moved the parties respectively in the reorganization of this very large and complicated corporate system, it is not to be supposed that the H. B. Claflin Corporation and the Mercantile Stores Corporation, the parties who took it over, gave cash or notes to the note creditors of the alleged bankrupt for their claims without some consideration moving to them from it, or that the creditors of the alleged bankrupt released it without some consideration moving to them from it or from some one on its behalf, whether for value or gratuitously makes no difference. In short, we think the 15 per cent. cash and the 85 per cent. in notes are to be regarded as equivalents of the 65 per cent. of the claims in cash which was to be paid under the composition agreement, and that the proceeding is to be treated throughout as if 65 per cent. of the claims in cash had been deposited with the court "to be paid" to the note creditors. Judge Chatfield properly allowed the referee his commissions thereon.

The order is affirmed.