## In re REALTY ASSOCIATES SECURITIES CORPORATION.

### No. 24860.

District Court, E. D. New York.
April 3, 1934.

550

Alfred T. Davison, of New York City (Orrin G. Judd and Robert P. Levis, both of New York City, of counsel), for bankrupt.

James N. Rosenberg, of New York City, for Realty Associates, Inc.

Krause, Hirsch & Levin, of New York City (George C. Levin, of New York City, of counsel), for referee.

Fred L. Gross, of Brooklyn, N. Y., in pro. per.

Colby, Brown & Pollack, of New York City (Edward D. Brown and Edgar A. Pollack, both of New York City, of counsel), for Bondholders' Committee.

Cullen & Dykman, of Brooklyn, N. Y. (R. W. Crolly, of Brooklyn, N. Y., of counsel), for Brooklyn Trust Co.

GALSTON, District Judge.

This is an application to confirm the composition offered by the bankrupt following the affirmance by the United States Circuit Court of Appeals, 69 F.(2d) 41, of the order of Judge Campbell entered January 5, 1934.

The offer in composition is similar to that which was submitted to Judge Campbell, with the exception that there was eliminated from the offer, following the entry of the mandate of the Circuit Court of Appeals, the provision which called upon the bankrupt to pay "such compensation and expenses of the three bondholders committees, of which William E. Kennedy, Jr., J. Lester Fierman, and Frederick S. Robinson are respectfully chairmen, and such fees and disbursements of their respective counsel, including counsel for the Manufacturers Trust Company, in such amounts as the court may fix or approve."

The modified offer of composition was presented to the creditors before the referee, to whom the case was referred, and he has rendered his report. Creditors, in majority and amount, are in favor of this composition. Total claims are $13,008,038.30.

Specifications of objections to the composition were filed on behalf of one Homer E. Palmer of San Luis Obispo, Cal., by Samuel M. Brook, Esq., as his attorney. Exceptions to the sufficiency of these specifications were filed on behalf of the bankrupt, and by certain creditors of the bankrupt. The claim of the objecting creditor, Palmer, is $1,049.

The exception to the first specification is sustained on the ground that the specification does not set forth an act which would be a bar to the confirmation of the composition. It alleges, among other matters, that the bankrupt, prior to the date of the filing of the petitions, entered into a conspiracy with others to defraud creditors of the bankrupt and to conceal its assets and fraudulently to dispose of the same and to put through a composition not for the best interests of creditors. But there are no facts alleged which would fairly apprise the bankrupt of the charge made. The allegations are vague and indefinite.

The second specification alleges that a fair opportunity was not accorded to these creditors to examine the bankrupt, in that the meeting of creditors before the referee was disorderly; "that bedlam reigned, boos and catcalls, hand clapping, loud and angry discussions and an attempted assault were some of the constant interruptions of the attempt to examine the bankrupt." Testimony taken at the hearing of the offer of composition in open court resulted in a dismissal of this specification for failure of proof.

■ The third and fourth specifications set forth that the composition is not in the best interests of the creditors. ·This composition was twice accepted by a majority in number of all creditors whose claims have been allowed, representing also an overwhelming majority, in amount, of such claims. If the composition were against the best interests of creditors holding claims aggregating $13,-008,038.30, one would expect opposition from creditors holding more than an obligation of $1,049. But, aside from the insignificance of this claim, a fair consideration of the merits of the offer leads to the conclusion that it is in the best interests of the creditors. The bankrupt deals in first and second mortgages. The present economic condition of the country in general, and the market in real estate in particular, lead to the belief that, if its assets are to be liquidated on any fair expectation of a return to its creditors and stockholders, they should be liquidated over a period of years, rather than through a ·forced sale in the present market.

Accordingly, the exceptions to the third and fourth specifications are likewise sustained.

Since I find that the composition offer is for the best interests of creditors, that the bankrupt has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to its discharge, and since the offer and its acceptance appear to have been made in good faith, as provided for in section 12 of the Bankruptcy Act (title 11, U. S. C., § 30 [11 USCA § 30]), and not by means of any promises or acts therein forbidden, the composition is confirmed.

There remain for consideration the important questions of proposed allowances to the referee, the receivers, and some miscellaneous allowances.

■ The referee has calculated his commissions on the basis of $13,008,038.30. To this, both the bankrupt and creditors object. The question involved turns on an interpretation of section 40 of the Bankruptcy Act (title 11, § 68, U. S. C. [11 USCA § 68]). That section provides that the compensation of the referee is to be "one-half of 1 per centum on the amount to be paid to creditors upon the confirmation of a composition."

It is contended, on the one hand, by the referee that the amount to be paid to creditors is 100 per cent. of their claims; and, since the amount of these claims is $13,008,-

038.30, he asserts that he is entitled to $65,-040.19. Those in opposition say, on the other hand, that the only amount to be paid to creditors upon the confirmation is 15 per cent., not 100 per cent.

I am unable to agree with either of these positions. Under the terms of the composition, the creditors are to receive 15 per cent. in cash, and (with the exception of five creditors holding claims aggregating $208,133.-90[1]) are to retain their bonds under certain modifications thereof which are to be indorsed upon those bonds. The offer in composition says: "The remaining eighty-five per cent (85%) of the amount on which said fifteen per cent (15%) is computed shall be evidenced by the existing outstanding bonds as reduced and modified as hereinafter provided."

The effect is to keep alive the old debt modified in the following major particulars:

(a) The maturity of the three issues involved is extended to October 1, 1943, as against respective maturities of July 1, 1935, December 1, 1937, and October 1, 1938.

(b) The interest rate is 5 per cent. instead of 6 per cent.

(c) Bondholders are given a representation of four directors on a board of twelve.

However one may view the transaction, 85 per cent. of the old debt persists. It is not discharged. It survives in a modified form. To assert that acceptance of the offer of composition wipes out the old debt, because in terms it has been but modified, is to deal with verbal niceties, which in no respect appeals to the conscience of the Court.

On the other hand, to assert the extreme position that the amount paid on composition is but the 15 per cent. paid in cash, is equally unfair. Again, in all good conscience, the present ascertainable value of the securities should be regarded as part of the payment made upon composition.

Some proof in the form of affidavits has been submitted on this motion from which it appears that the market value, based on actual sales known to the affiants, brokers who deal in such securities, is 37. When 15 per cent. of the face·value of the bond is paid, these brokers believe that the present market value of the bond will be 22. I accept that figure despite the fact that the bond will bear interest no longer at 6 per cent. but only at 5 per cent.; but I feel that such loss will be at least offset by the sentimental value at-

[1] These creditors under the offer are to receive 15% cash and 85% in treasury bonds.

tached to the bond of a going, rather than of a defunct, corporation.

In reaching the foregoing conclusion, I have done so only after a careful reading of authorities submitted by both sides. The referee cites In re Batterman Co. (C. C. A.) 231 F. 699, 700. In this case it appeared that the bankrupt offered a composition of 65 per cent. in cash, which offer was accepted. Later a body of creditors holding notes of the bankrupt to the order of H. B. Claflin Company, and indorsed by it, waived in writing the deposit of cash which the court required under section 12b of the Bankruptcy Act (11 USCA § 30 (b). On the same day they also waived payment of their claims upon confirmation of the composition. Subsequently, the referee reported to the court in favor of confirming the composition, and the court on confirmation directed the bankrupt to deposit cash with the clerk to cover the costs of the proceedings and the claims of creditors who had not waived the deposit of 65 per cent. in cash. The note creditors were parties to the plan of reorganization of the H. B. Claflin Company, and under it exchanged their notes for 15 per cent. of the same in cash paid by the H. B. Claflin Company, and the balance of 85 per cent. in notes of another corporation, the Mercantile Corporation. The question presented to the court was the determination of the question as to whether the referee was entitled to commissions on the claims of the note creditors. The court said:

"Now, without knowing the precise considerations which moved the parties respectively in the reorganization of this very large and complicated corporate system, it is not to be supposed that the H. B. Claflin Corporation and the Mercantile Stores Corporation, the parties who took it over, gave cash or notes to the note creditors of the alleged bankrupt for their claims without some consideration moving to them from it, or that the creditors of the alleged bankrupt released it without some consideration moving to them from it or from some one on its behalf, whether for value or gratuitously makes no difference. In short, we think the 15 per cent. cash and the 85 per cent. in notes are to be regarded as equivalents of the 65 per cent. of the claims in cash which was to be paid under the composition agreement, and that the proceeding is to be treated throughout as if 65 per cent. of the claims in cash had been deposited with the court 'to be paid' to the note creditors."

The most then that the Batterman Case shows is that the offer in composition contemplated the deposit of cash, that some creditors waived the cash provision, but that such waiver was immaterial in the calculation of the referee's compensation. No such situation is presented in the present case.

Kinkead v. J. Bacon & Sons et al. (C. C. A.) 230 F. 362, 366, is the other main reliance of the referee. This case also dealt with the matter of waiver of deposit, and is of no greater relevancy than the Batterman Case. The opinion states: "On the contrary, the note holders' committee's acceptance of the composition offer (filed contemporaneously with the 'waiver of deposit') accepted in express terms 'the offer of composition at 35 per cent. to be made herein by * * * the above named bankrupt * * * and payable in cash'; and the waiver itself was limited to 'the deposit of money necessary to apply for the confirmation of said composition.' Beyond doubt the creditors in question, notwithstanding their waiver of deposit, could enforce such payment in cash by the bankrupt. The latter's discharge by virtue of the composition proceedings would destroy the remedy in bankruptcy, but not the debt for the consideration to be paid under the composition. Bankr. Act, § 14c [11 USCA § 32 (c)]; Zavelo v. Reeves, 227 U. S. 625, 33 S. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664."

The present case deals with no matter of waiver of deposit. It is a matter of cash and securities. The question presented is, What is the fair value of the securities?

In re Mills Tea & Butter Co. (D. C.) 235 F. 815, has a bearing in the present proceeding. In that case it appeared that the offer of composition gave a choice of 25 per cent. cash or 100 per cent. in stock of a new corporation. The referee calculated his compensation on the basis of 100 per cent. par value of the stock. No evidence was offered as to what its value really was, and accordingly the court held that the compensation should have been measured on the basis of the 25 per cent. cash.

I conclude, therefore, that the referee's commissions must be figured on the basis of, not 100 per cent. of $13,008,038.30, but only[2] 37 per cent. of such sum. His commission of ½ per cent. on that sum is $24,064.87.

The next question involved is that of the compensation to be paid the receivers. The referee has recommended commissions to

---

[2] 15% cash, plus 22% as the cash value of the securities.

Fred L. Gross of one-half of 1 per cent. of the total sum of $13,008,038.30, that is, $65,040.19; to Frank Fox, he recommends an allowance of $43,360.13. The receivers were appointed on July 10, 1933. Mr. Gross acted as the receiver from the time of his appointment; Mr. Fox, only from the date of his appointment to and including January 4, 1934.

Under court order the business of the bankrupt was continued by the receivers. Accordingly, the measure of their compensation is determined by section 48, subds. d, e, of the Bankruptcy Act (title 11, U. S. C., § 76, subds. (d) and (e), 11 USCA § 76 (d, e). These subdivisions contain the following passage: "In case of the confirmation of a composition such commissions shall not exceed one-half of 1 per centum of the amount to be paid creditors on such composition." See, also, In re Sol Gross & Co., Inc. (D. C.) 274 F. 741.

The allowances recommended by the referee are the subject of vigorous protest. The real question involved is whether the receivers' compensation is to be based upon the entire amount of the composition or merely upon the cash payment. In this respect the receivers are in the same position as the referee, and should be compensated on the basis of the cash payment and the present market value of the securities retained. Accordingly, I find that the total amount to be allowed the receivers under the provisions of section 76, subds. (d) and (e), is the sum of $48,129.74, being 1 per cent. of the 15 per cent. paid in cash and the present value of the securities.

Mr. Gross served, roughly, nine months as receiver, as against six months' service by Mr. Fox. It becomes the duty of the court to apportion the fees of the receivers. The referee in his recommendation followed a division of about 60 per cent. to Mr. Gross, and 40 per cent. to Mr. Fox, and I see no reason for departing from that apportionment. Accordingly, Mr. Gross is awarded the sum of $28,877.84, and Mr. Fox, $19,251.90.

The referee recommends the payment of $2,000 to Jacob A. Freedman, as attorney for Frank Fox, one of the receivers. Mr. Freedman was appointed under an ex parte order of this court on November 20, 1933, for the purpose of defending the proceedings instituted against Fox for his removal as receiver. Those proceedings were instituted on October 4, 1933.

Though the order of retainer was dated November 20, 1933, it provided: "That this particular order be considered as nunc pro tunc as of the 4th day of October, 1933, the date when the order to show cause was duly served upon the aforesaid receiver."

If this matter were presented to me de novo, I should be obliged to deny the application, for the reason that I do not find authority in the General Orders to warrant the granting of the relief sought. Such services were not rendered in conformity with General Order No. 44 (11 USCA § 53) of the United States Supreme Court, which reads: "No attorney for a receiver or a trustee shall be appointed except upon the order of the court, which shall be granted only upon the verified petition of the receiver or trustee, stating the name of the counsel whom he wishes to employ, the reasons for his selection, the professional services he is to render, the necessity for employing counsel at all, and to the best of the petitioner's knowledge all of the attorney's connections with the bankrupt or debtor, the creditors or any other parties to the proceedings, and their respective attorneys. If satisfied that the attorney represents no interest adverse to the receiver, trustee, or any creditor in the matters upon which he is to be engaged, and that his employment would be to the best interests of the estate, the court may authorize his employment, and such employment shall be for specific purposes unless the court is satisfied that the case is one justifying a general retainer. If without disclosure any attorney acting for a receiver or trustee shall have represented any interest adverse to the receiver, trustee, or any creditor in any matter upon which he is employed for such receiver or trustee, the court may deny the allowance of any fee to such attorney, or the reimbursement of his expenses, or both, and may also deny any allowance to the receiver or trustee if it shall appear that he failed to make diligent inquiry into the connections of said attorney." See In re Eureka Upholstering Co., Inc. (C. C. A.) 48 F.(2d) 95; H. L. Stratton, Inc. (C. C. A.) 51 F.(2d) 984.

However, I am constrained by the order in the case, as the law of the case, and accordingly shall make some award to Mr. Freedman.

As to the amount of such allowance it must be measured by the services rendered for the particular purpose covered by the retainer. Fox's petition for the appointment of Mr. Freedman sets forth services rendered even prior to October 4, 1933, and Mr. Freedman's application for allowance cannot be read consistently with the Fox petition, at

least in that respect. Many of the matters set forth in Mr. Freedman's application for services rendered subsequent to October 4, 1933 were, according to the Fox affidavit, performed by Mr. Freedman prior to October 4, 1933. That some meritorious service was rendered in the specific matter affecting Mr. Fox's status as receiver is undoubted, and under the order in the case, Mr. Freedman should be compensated therefor.

I set the award at $1,000. If this is not adequate compensation for all the services rendered by Mr. Freedman to the receiver Fox, that is a matter that may be an obligation of Mr. Fox, but not of the bankrupt's estate.

The application of Samuel M. Brook for an allowance for services rendered an objecting creditor was properly denied by the referee. Mr. Brook claims under section 64b of the Bankruptcy Act (U. S. C. title 11, § 104 (b), 11 USCA § 104 (b), asserting that he succeeded in having the confirmation of the previous composition refused or set aside. The previous composition was modified, but not as a result of his efforts. From Judge Campbell's opinion, it appears that no specifications of such objections had been filed.

The report of the referee as to the other allowances is confirmed.

Motion to confirm granted. The report of the referee is confirmed except as to those modifications set forth herein.

Settle order on notice.