REALTY ASSOCIATES SECURITIES CORP. ET AL.
v. O'CONNOR ET AL.

No. 625.   Argued April 8, 9, 1935.—Decided April 29, 1935.

*Mr. Alfred T. Davison* for Realty Associates Securities Corp., petitioner.

*Mr. James N. Rosenberg* for Realty Associates, Inc., petitioner.

*Mr. George C. Levin,* with whom *Messrs. Sydney Krause* and *George J. Hirsch* were on the brief, for O'Connor, respondent.

*Mr. Archibald Palmer* for Eliza B. Carmen et al., respondents.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The controversy is one as to the compensation of a referee in bankruptcy upon a composition with the creditors.

Realty Associates Securities Corporation was adjudged a bankrupt, July 10, 1933, upon the filing of a voluntary petition. At the same time the proceeding was sent to a referee in bankruptcy. The chief claims ($12,631,-949.67) were on bonds issued under indentures between the bankrupt and a trust company as trustee. The other claims were only $208,133.90, of which amount one for $207,583.95 is contested and undetermined. On February 16, 1934, the bankrupt made an offer to the creditors of terms of composition pursuant to the statute (Bankruptcy Act, 30 Stat. 549, c. 541, § 12; 11 U. S. C. § 30), which offer was accepted by the requisite majority. The District Judge found the composition to be for the best interests of the creditors (Bankruptcy Act, § 12 (d)) and confirmed it. By its terms, all creditors were to receive cash for fifteen per cent of the amount of their claims as filed and allowed. Holders of bonds (after crediting the cash) were to extend and otherwise modify the obligation for the remaining eighty-five per cent. Creditors not bondholders, an almost negligible number, were to receive

bonds in the treasury of the company reduced and modified in the same way. The time for the payment of the principal was postponed until October 1, 1943; the rate of interest was lowered from six per cent to five; the interest accruing semiannually before October, 1943 was to be payable only out of earnings, but the liability was to be cumulative, and upon maturity of the principal was to be discharged in full; the creditors were to be represented on the Board of Directors; and there were to be restrictions on investments and on the creation of new debts. The composition did not call for the cancellation or surrender of bonds then outstanding. There was, however, to be attached to each of them a rider, described as a "notation of reduction and modification," which was to be evidence of the foregoing changes. Cash in the requisite amount was deposited with the clerk of the court, and other instruments, so far as necessary, were signed and filed.

In the meantime a question had arisen as to the compensation payable to the referee. "Referees shall receive as full compensation for their services . . . one half of 1 per centum upon the amount to be paid to creditors upon the confirmation of a composition." Bankruptcy Act, § 40 (a); 11 U. S. C. § 68.* The creditors took the position that the percentage was to be computed upon the cash, and nothing else. The cash payments being

---

* "(a) Referees shall receive as full compensation for their services, payable after they are rendered, a fee of $15 deposited with the clerk at the time the petition is filed in each case, except when a fee is not required from a voluntary bankrupt, and 25 cents for every proof of claim filed for allowance, to be paid from the estate, if any, as a part of the cost of administration, and from estates which have been administered before them 1 per centum commissions on all moneys disbursed to creditors by the trustee, or one-half of 1 per centum on the amount to be paid to creditors upon the confirmation of a composition."

$2,091,129.04, the compensation on that basis would be $10,455.65. The referee maintained that he was entitled to a percentage not only on the cash, but also on the face amount of the principal payable upon the bonds nearly ten years thereafter. Figuring the total cash and bonds at $13,008,038.31, he arrived at a fee of $65,040.19. The District Judge followed an intermediate course. 6 F. Supp. 549. Testimony was received that the bonds were then selling in the market, after public notice of the composition, at 37% of par, and that their market value would be 22% when the principal had been reduced by a credit of 15% in cash. The District Judge estimated the bonds as equivalent to cash to the extent of 22% of the par value of the principal. The total fees thus figured were $24,064.87. An order was made accordingly.

The creditors took no appeal, acquiescing in the award, though some believed it to be too large. The referee, however, did appeal. The Court of Appeals for the Second Circuit sustained the position of the referee, one judge dissenting. 74 F. (2d) 61. The decision was that in figuring the commissions the bonds were to be reckoned as a payment of the full amount of the principal payable thereunder. On the petition of the bankrupt and a creditor a writ of certiorari issued from this court.

We think it an unreasonable view of the meaning of the statute (Bankruptcy Act, § 40; 11 U. S. C., § 68) that would treat the bonds of the bankrupt in the situation here developed as equivalent to cash.

In determining the effect of any particular composition, a " payment " or an " amount paid " must have a sensible construction, which may vary in one case and another according to the facts. Here, at the date of the bankruptcy, creditors were the owners of the bonds of the bankrupt, its promises, non-negotiable in form, for the payment of money, to the extent of nearly $13,000,000. At the date of the composition and afterwards, they held the same bonds, scaled down in amount as to principal

and interest, and with some of the terms varied, but still the same bonds with the promises to pay not fulfilled, nor even accelerated, but on the contrary deferred. Common sense revolts at the suggestion that creditors have been paid for this purpose or for any other when all that has happened is that they have been left in possession of the old promises of the debtor, reduced in amount and extended as to time.

Referees in bankruptcy are public officers (11 U. S. C. §§ 61, 64), and officers of a court. Like public officers generally, they must show clear warrant of law before compensation will be owing to them for the performance of their public duties. *United States* v. *Garlinger*, 169 U. S. 316, 321; *People ex rel. Rand* v. *Craig*, 231 N. Y. 216, 221. Extravagant costs of administration in the winding up of estates in bankruptcy have been denounced as crying evils. Strengthening Procedure in the Bankruptcy System, Sen. Doc. No. 65, 72d Congress, 1st Sess., (1932), p. 53; also H. R. Rep. 65, 55th Congress, 2d Sess. (1898), p. 44. In response to those complaints, Congress has attempted in the enactment of the present statute to fix a limit for expenses growing out of the services of referees and receivers. Bankruptcy Act §§ 40, 48 (d) (e); 11 U. S. C. §§ 68, 76. The pay for referees is no longer involved in uncertainty as to the applicable percentage. By mischance there is still uncertainty at times as to the principal amount to which the rate is to be applied. In cases of composition the principal is " the amount to be paid to creditors upon the confirmation," and before we can compute what is due we must know what payment is. The ascertainment of that fact, like the ascertainment of facts generally in the discharge of the judicial function, is a process that must be flexible and broad enough to keep all the circumstances in view. In weighing their significance a court will not forget that Congress meant to hit the evil of extravagance, and that the meaning of its words, if doubtful, must be adapted

to its aim. If this is kept in mind, certain inferences will follow. One of them will be that a promise is not payment unless it would naturally be so regarded in the common speech of men, and that the extent of the payment, whether partial or complete, must be subject to a kindred test.

Viewing this case from that angle of vision, we hold that the referee had full compensation in the award of commissions that was made by the District Judge. Whether he was entitled to as much, we do not now determine, the creditors and the bankrupt, who were at liberty to oppose, having preferred to acquiesce. For present purposes it is enough that he was not entitled to more. The bonds had a value in the market that would have made it possible for a creditor to convert them into money at 22% of par. If present values were to be estimated, this was the present value of the promise of the debtor as of the date of composition. To find anything in addition would be to capitalize a hope.

The facts of the case before us define the scope of our decision. We are not required to adjudge the effect to be given to the acceptance of bonds or notes when made in different circumstances or with other possibilities of benefit. For like reasons there can be no profit in stating or analyzing the holdings in other federal courts. *In re Batterman*, 231 Fed. 699; *In re Mills Tea & Butter Co.*, 235 Fed. 815; *American Surety Co.* v. *Freed*, 224 Fed. 333; *In re J. B. White Co.*, 225 Fed. 796; *Kinkead* v. *J. Bacon & Sons*, 230 Fed. 362; *In re Columbia Cotton Oil & Provision Corp.*, 210 Fed. 824. They grew out of situations very different from this one, and are not consistent with one another. No principle of general application can be extracted from them.

The respondent referee invokes the analogy of General Order XLVIII (4), adopted April 24, 1933 (288 U. S. 636, 637), which fixes the commissions of referees in proceed-

ings under § 74 of the Bankruptcy Act. Section 74 (11 U. S. C. § 202) and the rules applicable thereto have relation to proceedings for the relief of a debtor not a bankrupt who seeks a composition or an extension of his debts. The present proceeding under § 12 of the act (11 U. S. C. § 30) is for a composition by a bankrupt. The general order was passed in the exercise of the rule-making power, and was directed to proceedings of a particular class. The jurisdiction that we now exercise is part of the judicial function, and is directed to proceedings of a different class. The one does not control the other. *Meek* v. *Centre County Banking Co.*, 268 U. S. 426, 434; *West Co.* v. *Lea*, 174 U. S. 590, 599.

We find no merit in the objection that there has been an omission of parties whose presence is essential to the exercise of our supervisory jurisdiction.

The decree of the Circuit Court of Appeals should be reversed, and that of the District Court affirmed.

*Reversed.*

