## In re REPUBLIC GAS CORPORATION.

District Court, S. D. New York.

Nov. 20, 1935.

W. Randolph Montgomery, of New York City, trustee.

Mudge, Stern, Williams & Tucker, of New York City (Joseph V. Kline, of New York City, of counsel), for American Nat. Bank, City Nat. Bank, and National Bank of Commerce, bondholders.

White & Case, of New York City (Joseph M. Hartfield and Ernest G. Fifield, both of New York City, of counsel), for Bondholders' Protective Committee.

Cravath, deGersdorff, Swaine & Wood, of New York City (Donald C. Swatland,

of New York City, of counsel), for Continental Supply Co.

Fred Moore, of Houston, Tex. (L. F. Huttenlocher, of New York City, of counsel), for R. Wayne Lawler, receiver of Moody Seagrave Co.

Chadbourne, Stanchfield & Levy, of New York City (C. B. Hughes and David S. Hecht, both of New York City, of counsel), for Manufacturers Trust Co., trustee of bonds of debtor corporation.

Scudder, McCoun, Stockton & Kerfoot, of New York City (Branch P. Kerfoot, of New York City, of counsel), for debtor.

L. W. Lougee, of New York City, for Empire Power Corporation.

Vinson, Elkins, Sweeton & Weems, of Houston, Tex. (Lewis N. White, of Houston, Tex., of counsel), for Republic Natural Gas Co., successor in interest to debtor herein.

Clarence E. Lott, of Negaunee, Mich., for First Nat. Bank of Negaunee, Mich., a bondholder, and for several other banks in Upper Peninsula of Michigan, and also for some bondholders in Upper Peninsula of Michigan.

Ben A. Matthews, of New York City, special master.

CAFFEY, District Judge.

Applications are made by committee counsel as follows: (1) Chicago counsel, compensation $3,500 plus disbursements $31.57; (2) Wilmington counsel, compensation $1,000 plus disbursements $10.75; (3) New York counsel, compensation $60,000 plus disbursements $963.53; and (4) Houston counsel, compensation $13,000. The totals are compensation, $77,500; disbursements, $1,005.85; in all, $78,505.85.

As a preliminary, it is pertinent to note a change in the law which affects consideration of all the applications.

Here upwards of 90 per cent. of the bonds were deposited with a so-called bondholders' protective committee. The deposit agreement, dated January 20, 1932, is in terms then quite usual and widely prevalent. Paragraph ninth vested in the committee authority not alone to employ attorneys, but to "fix and pay" their compensation. In the absence of bad faith or fraud, and none is charged here, so far at least as concerns depositors of bonds and, wholly or substantially, for practical purposes so far as concerns all partici-

pants in a reorganization, under this contract provision the court had no power to interfere with the decisions of the committee. Habirshaw Electric Cable Co. v. Habirshaw Electric Cable Co., Inc. (C.C. A.) 296 F. 875, 43 A.L.R. 1035. So long as that recognition was accorded a deposit agreement, the committee's determination of what should be paid its lawyers was generally final.

In proceedings under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, however, this is no longer true. Not alone is the court vested with authority, but it has the duty, to scrutinize deposit agreements and, in proper cases, it must "disregard" their provisions (subdivision (b), 11 U.S.C.A. § 207 (b), near the end) and itself, after hearing creditors and stockholders of the debtor on notice (subdivision (c) (7), 11 U.S.C.A. § 207 (c) (7), it is obligated to determine what is reasonable, and to allow only what is reasonable, compensation for a committee's counsel (subdivision (c) (9), 11 U.S.C.A. § 207 (c) (9); In re Paramount-Publix Corporation (D.C.) 12 F.Supp. 823.

(1) Four plans or amended plans for the reorganization of the debtor have been drawn. The first was dated in November, 1932; the second in July, 1933; the third in July, 1934; and the fourth in May, 1935. The first and second preceded the institution (in June, 1934) of the present proceedings.

The applying Chicago counsel were employed in 1932 by a committee formed to reorganize the Missouri Valley Gas Company and the Argus Company, subsidiaries of the debtor. The committee has been referred to as the Buck-Morris-Baker Kansas properties committee and will be hereafter referred to as the Kansas committee. One committee member declined compensation. The other two members and the committee counsel (the present applicants) were paid by the subsidiaries (one-half by each) or these companies assumed the payments. For services to that committee, the applicants were paid $15,000.

The testimony of the chairman of the debtor's bondholders' committee (who was also a member of the Kansas committee) is explicit that the employment of the applicants was by the Kansas committee. I fail to discover in his statement anything indicating their employment by the bond-

holders' committee (minutes, pp. 714–717, 722–724).

The petition of the applicants is somewhat vague. Its terms are general only. Apparently they drafted the original of the November, 1932, debtor's reorganization plan and proposed an amendment to the July, 1933, reorganization plan. My impression is, however, that the proof makes clear that this work was done solely in their capacity as counsel for the Kansas committee.

Paragraph 1 of their petition alleges that they represented the Kansas committee for more than two years. There are some general statements in the petition (paragraphs 6, 7, and 9) about discussions with the bondholders' committee, its members, and New York counsel; but there is no allegation that they were ever employed by the bondholders' committee, nor is there anything, either in the petition or in the evidence, which would warrant a finding that they acted as that committee's counsel or that the committee contemplated that it would pay them.

In the present state of the record, the application must be denied. The applicants were afforded opportunity to supplement their showing (minutes, pp. 810–814). They have not done this. However, within a reasonable time, they may submit further evidence (if they see fit) on notice to the debtor's counsel and the bondholders' committee's New York counsel. If additional material be furnished, I shall be glad to consider it.

█ No details are given about the disbursements claimed. Without such, it is impossible for me to determine whether they are of the kind for which an allowance is permissible. If the application be renewed, the facts as to the disbursements (giving at least the substance of their nature by classes) should be supplied.

(2) At the August 5 hearing (minutes, pp. 649–651) a statement was made as to the services of Wilmington counsel for the bondholders' committee. No one opposed allowance to them of the amount asked. I reserved decision, so as to examine their application. I do not find it, however, among the papers submitted to me. If the original or a copy be supplied, further consideration will be given to it.

(3) The description of the work of New York counsel in their application is fair.

Differences of opinion were expressed at the August 5 hearing concerning the amount which should be allowed (minutes, pp. 515, 775–783).

█ In my memorandum No. 2 [1] I referred to the authorities governing fixing the value of professional services. As said in Realty Associates Securities Corporation v. O'Connor, 295 U.S. 295, 299, 55 S.Ct. 663, 665, 79 L.Ed. 1446, it is the duty of the court "to keep all the circumstances in view." The late Judge Choate, who served in this court many years ago, summarized the elements for consideration as follows:

"(1) The time which has fairly and properly to be used in dealing with the case; because this represents the amount of work necessary. (2) The quality of skill which the situation facing the attorney demanded. (3) The skill employed in meeting that situation. (4) The amount involved; because that determines the risk of the client and the commensurate responsibility of the lawyer. (5) The result of the case, because that determines the real benefit to the client. (6) The eminence of the lawyer at the bar, or in the specialty in which he may be practicing." [See In re Osofsky (D.C.) 50 F.(2d) 925, 927.]

There is no exact standard. No two cases are alike.

█ In most of the authorities referred to in prior memoranda, the number of days or hours on which counsel there concerned were engaged is not disclosed. In one the Supreme Court approved an allowance at the rate of $35 an hour. In another, decided by this court, compensation was at the rate of approximately $6.25 an hour. In the case at bar, services of applicants consumed 1,820 hours. If time alone were controlling, then at one of the rates mentioned the applicants' compensation would be $63,700 and at the other rate it would be $11,325. Manifestly, however, it would be unfair to consider time alone and to give no weight to other elements.

The work ran over a period of about three and one-half years. Without going into what is debatable, it is conservative to say that the property involved was worth at least $10,000,000; probably much more. Due to the nature of the enterprise, being chiefly extraction of oil and gas from far beneath the earth's surface, appraisal of the property was difficult. The indebted-

---

[1] No opinion for publication.

ness was upwards of $10,000,000. The outstanding bonds were upwards of $7,-000,000. The bonds had been down to 7 and sold at 70 shortly after the reorganization.

It was obviously in the interest of all parties that there be a reorganization. In order to accomplish this end, numerous conflicts between groups had to be reconciled.

The applicants contributed a great deal of skill toward effecting the reorganization. They carried on their shoulders much of the responsibility.

In harmony with the court decisions, including those admonishing exercise of moderation, after reviewing all the facts, I am convinced that a fair fee is $50,-000; and that sum will be allowed.

Under the conditions prevailing in the conduct of law offices in this city, if for the same or similar services performed for private clients a somewhat larger sum had been charged, it is not improbable that it would have been acquiesced in. I cannot say that, under those conditions, such larger sum would have been much (if at all) out of line with what is reasonable. On the other hand, in reaching the figure I have adopted, I have taken (as I think I should take) into account these circumstances:

(a) The applicants heretofore received a fee of $3,500 for work done in the reorganization of the Kansas properties. In the present proceedings, it was indispensable that they have knowledge of those properties. In large part this was gained in doing that work. The affidavit and the register entries (Exhibit A) attached to the application include description of services in the Kansas properties reorganization.

(b) Apparently draft of the November, 1932, reorganization plan for the debtor was initially prepared by counsel for the Kansas committee. The applicants had that in hand at an early stage of their employment. It seems to have been the basis on which the amended plans were predicated.

(c) A substantial portion of the applicants' work covered items on which other lawyers seeking compensation were also engaged. Some such overlapping was unavoidable. Indeed, perhaps the work of the applicants would have lacked in complete care or thoroughness if, as the legal advisers of the bondholders' committee, they had not reached independent conclusions on a good many of the points. Nevertheless, the record shows several matters of consequence which were so nearly the sole concern of other lawyers that I have endeavored to eliminate what impresses me as plain duplication with respect to matters that were the primary responsibility of those lawyers.

(d) Although in the present connection I do not give weight to it, I think it not inappropriate to say I am inclined to feel that perhaps over much time was expended in resisting participation by the common stockholders in the reorganization.

■ In the schedule of disbursements (Exhibit B) expenses of evening work are not explained and, unless additional facts be presented, must be disallowed. The item of stenographic work and telephone tolls are governed by Bankruptcy Rule 16. Local telephone calls and typewriting charges which were not extraordinary must be eliminated. Items other than expenses of evening work, stenographic work, and telephone tolls are allowed.

On or prior to settlement of the order hereon, the applicants may furnish additional information in regard to the three reserved disbursement items.

I see no occasion to allocate part of the allowance to the period preceding commencement of the reorganization. If counsel think otherwise, they may be heard by memoranda on settlement of the order.

(4) The Houston applicants were counsel for the debtor prior to the institution of the Delaware bankruptcy proceedings. Since then, they have been counsel for the debtor's subsidiaries.

■ It is not clear whether the petition covers services to the debtor preceding the Delaware bankruptcy, exclusive of those immediately concerning the commencement of proceedings in Delaware; but, if so, it is plain, as I see it, that section 64b (3), as amended by Act May 27, 1926 (11 U.S.C.A. § 104 (b) (3), prohibits priority therefor. It seems to me obvious also that no allowance can be made in the present proceedings for services rendered to the subsidiaries.

Disregarding the two items mentioned, the services as disclosed by the papers divide themselves into four classes: (a) In the Delaware bankruptcy proceedings;

(b) in a Texas state court action and in a Texas bankruptcy proceeding during the pendency of the Delaware proceedings; (c) in this court during the foreclosure suit and in section 77B proceedings; and (d) in connection with the putting into effect of the reorganization plan, including work for the new company.

Allowance for services of the first class is prohibited because not approved by the Delaware court in conformity with subdivision (i) of section 77B. Moreover, I am inclined to think that, under section 64b (3) of the Bankruptcy Act, they would not have been allowable by the Delaware court. The bankrupt was represented in that court by other counsel, whose claim was allowed by the Delaware court and has been approved by this court.

With respect to the two items of the second class, it seems clear, on like grounds, that no allowance can be made by this court.

A very large proportion, perhaps the major part, of the services described in the petition and detailed in the applicants' register entries, constituting the third class, are sought as counsel for the bondholders' committee and the reorganization committee. The petition, the supplemental affidavit, and the testimony (minutes, pp. 783–810), however, establish that the applicants were not retained by either committee. Indeed, in the supplemental affidavit the applicants say explicitly that they "did not act as counsel for either of said committees as such, but acted for and in the interests of said subsidiaries of the debtor and (later upon the organization of Republic Natural Gas Company) in the interests of Republic Natural Gas Company." The evidence discloses that the applicants were quite accommodating and did a good many things bearing upon the reorganization. Nevertheless, these things were done without employment by either of the committees. Upon that account I see no warrant for allowing the compensation sought on the theory advanced in the petition.

In connection with the execution of the plan, there were necessary services, beneficial to the accomplishment of the reorganization (including putting it into operation), which were rendered by the applicants. While I have had some doubt as to whether for these services (the fourth class) I am authorized to make an allowance, I have resolved the doubt in favor of the applicants.

In the state of the record, it is somewhat difficult to separate off the fourth class services. This is particularly true because of confusion in the allegations, as well as in the register entries. It is hard to discriminate between services claimed to have been rendered "at the instance and request" of one of the committees, or of its members or counsel, which I have held not allowable, and services essential to carrying out of the plan which could not be adequately rendered by New York counsel. As best I can under the evidence, and applying the moderation rule, I estimate services of the fourth class as of the fair worth of $5,000. An allowance in that sum will be made to the applicants. In other respects the application is denied.