In re ARCTURUS RADIO TUBE CO.

No. 27035.

District Court, D. New Jersey.

Nov. 16, 1940.

Supplementary Opinion Nov. 26, 1940.

Garey & Garey and William St. John Tozer, all of New York City, by Eugene L. Garey, of New York City, for debtor.

Boston & Gillis, of New York City, by J. F. Gillis, of New York City, for Stockholders' Committee.

W. Ludlow James and David L. Sprung, both of New York City, by David L. Sprung, of New York City, for Creditors' Committee.

Bilder, Bilder & Kaufman, of Newark, N. J., by Nathan Bilder, of Newark, N. J., for certain stockholders.

Brady & Daly, of Newark, N. J., by Robert R. Daly, of Newark, N. J., for certain creditors.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J., by Edward J. O'Mara, of Jersey City, N. J., for certain creditors.

Samuel M. Hollander, of Newark, N. J., for certain creditors.

WALKER, District Judge.

In 1926, Arcturus Radio Company was incorporated under and in pursuance to the laws of the State of Delaware. The name thereof was subsequently changed to Arcturus Radio Tube Company (hereinafter referred to as "Arcturus"). The corporation engaged in the manufacture and sale of radio tubes with a factory, research laboratory, sales and general offices at 720 Frelinghuysen Avenue, Newark, New Jersey.

On December 1, 1937, a special meeting of the Board of Directors of said corporation was held and authorization given for the filing of a petition for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The petition for reorganization was filed after the close of business on December 3, 1937, and on December 13, 1937, this court, by order, approved the filing of the petition and provided for the operation of the business. The debtor continued in possession to July 2, 1940 [date of appointment of trustees, under plan of reorganization (liquidation) under Chapter X, 11 U.S.C.A. § 501 et seq.]. It discontinued manufacturing radio tubes in February, 1940, but not the sale thereof.

The deficit of the company at the close of business on December 31, 1937, was $298,955.72.

In July, 1932, Arcturus had issued and outstanding 600,000 shares of no par value common stock at $3,774,000.. In order to wipe out a December 31, 1931, deficit of $1,058,636.19, it, in 1932, changed its authorized stock from 600,000 shares of no par value to 1,200,000 shares with a par value of $1 each. The shareholders changed one share of old for two shares of new, and this resulted in a reduction of $2,574,000 in the capital of the company, which amount was credited to capital surplus. $1,058,636.19, the then existing deficit of the company was charged to the newly created capital surplus.

The entire capital surplus created by the stock adjustment in 1932 was entirely wiped out by December 31, 1936, and there, then existed a deficit of $165,438.32. The deficit on the books of the debtor in December, 1937, at the time of filing the petition under Section 77B was as hereinbefore stated $298,955.72. It should be noted, and it has been noted, that the officers of the debtor in 1937 effective January 1, 1937, reclassified groups of fixed assets and revised the basis and rates of depreciation. As a result, the depreciation charged to operation in 1937 was $28,055.62 as compared with $50,008.81 for the year 1936, or a decrease of approximately $22,000, which decreases the loss for 1937 by that amount.

The foregoing gives a brief word picture of the financial history of the debtor up to January, 1938, when it was continued in possession by an order of this court.

The debtor in possession operating its plant during the calendar year 1938 lost $48,435.65, or approximately $4,000 per month. Had the same amount of depreciation been charged on the books for 1938 as was charged for 1936, the net loss would have aggregated approximately $70,000 for 1938.

The net loss for the year 1939 under the management of the debtor in possession was $57,487.75. If the 1936 rates of depreciation were charged the loss would have been $80,000 for the period. The net losses for the months of January and February, 1940, aggregate $51,169.66.

The total loss as shown on the books of the debtor from January 1, 1938, up to February 29, 1940, amounts to $157,093.06.

The foregoing recital is deemed necessary in order to have a clear approach to the determination of the fees to be awarded the various counsel and committees who have given of their time and efforts in this reorganization proceeding.

It was decided by the various parties in interest early in 1940, that the debtor could not continue to manufacture and sell tubes and that something be accomplished forthwith to either liquidate or work out some immediate solution, for the situation was growing worse daily. A plan was finally evolved whereby a complete liquidation of the assets of the corporation was to be accomplished in accordance with the terms and conditions finally approved by this court. An order of consummation has been entered.

Allowances and expenses have been asked of the court, and they are hereinafter more particularly set forth; objections have been made to the greater part of the fees requested.

The amount of fees to be charged against a bankrupt estate is an expense of administration subject to examination and approval of the court. In re National Department Stores, Inc., D.C., 11 F.Supp. 633, at page 637. The Court is not without instructions in making allowances. The Supreme Court has said: "Extravagant costs of administration in the winding up of estates in bankruptcy have been denounced as crying evils." Realty Associates Securities Corporation et al. v. O'Connor et al., 295 U.S. 295, 55 S.Ct. 663, 665, 79 L.Ed. 1446.

"Compensation allowed a receiver or trustee or an attorney for a receiver or trustee shall in no case be excessive or exorbitant and the court in fixing such compensation shall have in mind the conservation and preservation of the estate of the bankrupt and the interests of the creditors therein." Act June 7, 1934, § 3, 11 U.S.C.A. § 76a. The United States Supreme Court said in Re Gilbert, 276 U.S. ,294, 48 S.Ct. 309, 310, 72 L.Ed. 580: "We are desirous of making it clear by our action that the judges of the courts, in fixing allowances for services to court officers, should be most careful, and that vicarious generosity in such a matter could receive no countenance." The Circuit Court of Appeals for this Circuit adopted the foregoing language of the Supreme Court in the case of Bailie et al. v. Rossell, 3 Cir., 60 F.2d 806, 807, and followed with the words: "This warning of the Supreme Court against 'vicarious generosity' has also been sounded by other federal courts."

■ "Formerly, the idea prevailed that attorneys were entitled to greater compensation when employed in a receivership or bankruptcy case than when serving private interests. In reality, receivers and attorneys are officers of the court. As public servants, their compensation should never be as large as the compensation of those engaged in private employment. By such considerations, debtors may be relieved and creditors and stockholders served." In re National Department Stores, Inc., supra [11 F.Supp. 637]. See, also, Standard Gas & Electric Co., 3 Cir., 106 F.2d 215. Applying these principles to the services rendered by the petitioners, it is readily apparent that the allowances prayed for are not only excessive but some claims are exorbitant. The court in Re National Department Stores, Inc., supra, 11 F.Supp. at page 638, writes: "Where numerous persons participate in rendering one service susceptible of being rendered by one person, needless duplication results which should not form the basis of compensation."

Sub-section 9 of paragraph 1 of Section 77B, 11 U.S.C.A. § 207(c) (9), provides that the court may allow reasonable compensation for services rendered and reimbursement for actual and necessary expenses incurred in connection with the proceedings and the plan by officers, parties in interest, depositories, reorganization managers and committees or other representatives of creditors or stockholders and the attorneys or agents of any of them or of the debtor. Silver et al. v. Scullin Steel Co. et al., 8 Cir., 98 F.2d 503, 508.

■ The only compensation which should be allowed out of the debtor's estate is for substantial and meritorious services rendered in the advancement of the reorganization proceedings and for the benefit of the estate. No stockholder or creditor or group of stockholders or creditors can retain counsel and bind the court to pay such counsel the full value of the services rendered under such retainer out of the estate of the debtor. The determination of what part of services rendered by counsel employed by stockholders or creditors may with propriety be charged to the trust estate, is primarily for the determination of the court. Silver et al. v. Scullin Steel Co., supra. The question of what services were actually rendered, the question of the benefit which inured to the estate because of the services rendered and the question of what proportion of the total services performed can be and should be paid for by the estate, are mainly questions of fact. Silver et al. v. Scullin Steel Co., supra.

Messrs. Garey & Garey, William St. John Tozer, Esq., David Sprung, Esq., Messrs. Boston & Gillis, and the Members of the Stockholders' Protective Committee for Capital Stock, from December 3, 1937 (date of filing petition), down to February, 1940, expended most of their efforts in an attempt to reorganize Arcturus. These efforts went for naught. It was not until February, 1940, that the thought of reorganizing was abandoned and a method of liquidating seriously considered. It is only necessary to refer to the losses hereinbefore set forth, to realize that only a small percentage of the considerable work performed can be classified as substantial and meritorious services rendered in the advancement of the reorganization proceedings and for the benefit of the estate. An examination of the entire record discloses the estate was not benefited to any great extent until each and every one of the parties interested began to cooperate on the question of how and in what manner liquidation could be accomplished. The result of these combined efforts was liquidation under a so-called Plan of Reorganization. (Chapter X) The Bankruptcy Act of 1938, 11 U.S.C.A. § 501 et seq.

Messrs. Bilder, Bilder & Kaufman were retained by certain stockholders; said stockholders cannot retain counsel and bind this court to pay such counsel the full value of the services rendered under such retainer, out of the estate of the debtor; therefore, they must look to their clients for their main compensation and the amount hereinafter allowed is the amount which, in the opinion of the court, can with propriety be charged to the trust estate.

Messrs. Brady & Daly by Robert Daly, Esq., were one of the first to object to reorganization and urge liquidation, and a persistent attitude called the attention of the court to many of the problems presented by the plans and assisted in the formation of the plan which was finally approved. They, however, had been retained by certain creditors and the full value of the services rendered cannot be paid out of the estate of the debtor; therefore, they must look to their clients for the main compensation and the amount here-

inafter allowed is the amount which, in the opinion of the court, can with propriety be charged to the trust estate.

The court finds that the claimants hereinafter identified are entitled to the following fees and disbursements:

An order in accordance with the foregoing should be presented.

### Supplementary Opinion.

The memorandum on the question of allowances was filed herein on November

| Claimant | Amount Requested | | Amount Allowed | |
|---|---|---|---|---|
| | Fees | Disb. | Fees | Disb. |
| Messrs. Garey & Garey and William St. John Tozer | $40,000.00 | $175.12 | $12,500.00 | $175.12 |
| Messrs. Bilder, Bilder & Kaufman | 3,500.00 | 52.82 | 1,000.00 | 52.82 |
| David Sprung, Esq. | 10,000.00 | 7.04 | 3,500.00 | 7.04 |
| Messrs. Boston & Gillis | 17,500.00 | 367.76 | 5,000.00 | 367.76 |
| Messrs. Brady & Daly | 7,500.00 | — | 1,500.00 | — |
| Mr. Edward McGuirk | 100.00 | — | 100.00 | — |
| Mr. Arthur J. Cale | 100.00 | — | 100.00 | — |
| Appraisers | | | | |
| Samuel S. Bloom, Esq., Secretary of the Creditors' Committee | 1,500.00 | 180.22 | 500.00 | 180.22 |
| Hulbert A. Yerkes, Lewis Lathan Clarke and Leslie G. Weldon, Members of Stockholders Protective Committee for Capital Stock | 4,500.00 | — | None | — |
| John Grimshaw, Jr., Referee and Special Master | 2,000.00 | — | 2,000.00 | — |
| Joel Schlesinger, Appraiser | 450.00 | — | 450.00 | — |
| Messrs. Puder and Puder, Certified Public Accountants | 907.50 | — | 907.50 | — |
| Mr. David C. Wilner, Appraiser | 250.00 | — | 250.00 | — |
| | $88,307.50 | $782.96 | $27,807.50 | $782.96 |

The claim of Mr. Howe P. Cochran (specialist in tax work) is held until the benefit accruing to the estate is established.

16, 1940, and it is amended to include the name of Samuel M. Hollander, Esq., attorney for certain creditors:

| Claimant | Amount Requested | | Amount Allowed | |
|---|---|---|---|---|
| | Fees | Disb. | Fees | Disb. |
| Samuel M. Hollander, Esq. | $750.00 | — | $200.00 | — |