In the Matter of **PARK DISTRIBUTORS, INC., Bankrupt.**

**Bankruptcy No. 85242.**

United States District Court
S. D. California,
Central Division.
July 22, 1959.

Powell & Banyard, Santa Ana, Cal., and Leo J. Friis, Anaheim, Cal., for petitioner-creditor.

George Gardner and Samuel Goldfarb, Los Angeles, Cal., for respondent-trustee.

MATHES, District Judge.

This bankruptcy proceeding is now before the Court upon a petition for review of an order of the Referee confirming a sale of the trustee's "right, title, and interest * * * in and to * * * [the] inventory of the [bankrupt] water service company * * *", consisting of a water well with pump and equipment, and certain easements and water service contracts. Bankruptcy Act, §§ 39, sub. c, 70, sub. f; 11 U.S.C.A. §§ 67, sub. c, 110, sub. f.

Petitioner on review, a creditor, requests that the sale be set aside on the ground that the Referee failed to give "at least ten days' notice by mail" of the intended sale as required by § 58, sub. a(4) of the Bankruptcy Act. 11 U.S.C.A. § 94, sub. a(4).

Section 58, sub. a(4) provides that: "Creditors shall have at least ten days' notice by mail, to their respective addresses as they appear in the list of creditors of the bankrupt or as afterward filed with the papers in the case by the creditors, of * * * (4) all proposed sales of property: *Provided,* That the court may, upon cause shown, shorten such time or order an immediate sale without notice * * *." 11 U.S.C.A. § 94, sub. a(4).

Responding to the petition for review, the trustee urges that "notice of proposed sale of the assets did go by mail to creditors inasmuch as in the Notice calling the first meeting of creditors, the creditors were informed that at such meeting the Court would act upon a Pe-

tition by the Trustee to sell the assets and the Court did at said first meeting grant to the Trustee right to sell the assets." Respondent trustee further insists that, if such notice was not sufficient, then the action of the Referee in confirming the sale was tantamount to an order for "immediate sale without notice" within the above-quoted proviso to § 58, sub. a(4) of the Act.

The "Notice of First Meeting of Creditors" relied on by the trustee as giving "at least ten days' notice by mail" stated among other things that "creditors may attend, prove their claims, appoint a trustee, * * * and transact such other business as may properly come before said meeting * * * including petitions * * * by the trustee * * * to sell assets of the said bankrupt * * *." ·

The Bankruptcy Act has long required notice to creditors of "every important step" in bankruptcy proceedings. 3 Collier on Bankruptcy § 58.01 (14th ed. 1941). Insofar as notice of an intended sale of property of the bankrupt is concerned, the obvious purpose is to safeguard the interests of creditors against abuse or mismanagement in the form of collusive, fraudulent, or otherwise improvident sales at inadequate prices. Butler v. Ellis, 4 Cir., 1930, 45 F.2d 951, 956; In re Kyte, D.C.M.D.Pa.1911, 189 F. 531; 6 Remington on Bankruptcy § 2539 (5th ed. 1952). However, the Act fails to set forth just what constitutes a sufficient notice within the requirements of § 58, sub. a(4). 11 U.S.C.A. § 94, sub. a(4). Absent controlling language, the statute is of course to be construed to promote realization of the legislative objective. People of Puerto Rico v. Shell Co., Ltd., 1937, 302 U.S. 253, 257–259, 58 S.Ct. 167, 82 L.Ed. 235; Ozawa v. United States, 1922, 260 U.S. 178, 194, 43 S.Ct. 65, 67 L.Ed. 199.

Obviously the plain congressional purpose would be best promoted by construing § 58, sub. a(4) to require that every notice of intended sale of property of a bankrupt estate include unequivocal statements as to the property proposed to be sold, the time and place of sale, the appraised value, the actually offered or the expected minimum sale price, and the names of prospective purchasers, if known. But practical considerations of time and cost in the administration of. bankrupt estates counsel that the Act be not so construed as to impose unnecessary burdens of expense in contravention of the "policy of economy" basic to bankruptcy administration. Callaghan v. Reconstruction Finance Corp., 1936, 297 U. S. 464, 56 S.Ct. 519, 80 L.Ed. 804; Realty Associates Securities Corp. v. O'Connor, 1935, 295 U.S. 295, 55 S.Ct. 663, 79 L.Ed. 1446, and see 6 Remington on Bankruptcy, supra, § 2630; 3 Collier on Bankruptcy, supra, § 62.04 at 1424. These latter considerations must be placed in the balance, and they weigh heavily when it is recalled that in many cases the assets of a bankrupt estate are meager and the creditors many.

In disposing of the trustee's contention that a notice within the requirements of § 58, sub. a(4) was given in the proceedings at bar, it is unnecessary to decide more than that the "Notice of First Meeting of Creditors" falls short, being indeed but an attempted catchall telling the creditors that, on the occasion of the meeting whereat a trustee is to be appointed, they may "transact such other business as may properly come before the meeting * * * including petitions * * * by the trustee * * * [as yet unknown] to sell assets [as yet undesignated] of the bankrupt * * *" at some time and place as yet undetermined.

Worth adding, however, is the fact that the sale under review took place some ten months after creditors received the asserted notice of possible sale embodied in the "Notice of First Meeting of Creditors." This serves to point up the fallacy of calling that blanket caveat a notice of proposed sale such as is contemplated by the Act. Cf. In re Galouzis, D.C.W.D.N.Y.1935, 10 F.Supp. 284. And were that not enough, it remains only to mention the patent failure of the "notice" to afford the safeguards intended to be given to the interests of creditors.

The conclusion just stated, that the "Notice of First Meeting of Creditors" does not meet the requirements of § 58, sub. a(4) as to the sale challenged here, necessitates consideration of the trustee's second contention. If the notice actually given was not sufficient, the trustee argues, "then the action of the Referee confirming a sale was tantamount to an order for immediate sale without notice", within the proviso to § 58, sub. a(4) which permits "the court * * *, upon cause shown, [to] shorten such time or order an immediate sale without notice." 11 U.S.C.A. § 94, sub. a(4).

■ This proviso, first enacted in 1938 [52 Stat. 867], was designed to "prevent waste and deterioration [of the bankrupt estate] and to avoid unnecessary delay" [H.R.Rep.No.1409, 75th Cong., 1st sess., at 13 (1937); In the Analysis of H.R. 12889, 74th Cong., 2d sess., at 181–183 (1936)]. Prior to 1938, notice to creditors could be dispensed with only where the property to be sold would depreciate in value so surely and so substantially during the ten-day-notice period that it might be properly characterized as "perishable." The 1938 proviso eliminates the "perishable" concept and gives the court increased latitude in dispensing with notice requirements, thus broadening the power of "immediate sale without notice", [6 Remington on Bankruptcy, supra, § 2539, 3 Collier on Bankruptcy, supra, § 58.09 at 498].

■■ Prerequisite to an order for "immediate sale without notice" is that "cause" must be shown. Congressional intent and the evil to be remedied are of course paramount where a broad term such as "cause", ambiguous because not expressly defined, must be construed. People of Puerto Rico v. Shell Co., Ltd., supra, 302 U.S. at pages 257–259, 58 S.Ct. at pages 169–170; Ozawa v. United States, supra, 260 U.S. at page 194, 43 S.Ct. at page 67. Fair appraisal of the legislative history indicates that "cause" is shown whenever it appears reasonably certain that some appreciable reduction in value of the particular property to be sold, or some substantial prejudice to the bankrupt estate in general, would result, without restriction as to exact reason, from the necessity of compliance with the notice provisions of § 58, sub. a (4). See H.R.Rep.No.1409, 75th Cong., 1st sess., at 13 (1937); In the Analysis of H.R. 12889, 74th Cong., 2d sess., at 181–183 (1936).

■ If then it appears that, by reason of the notice provisions of § 58, sub. a(4), a particular asset to be sold or the bankrupt estate in general will be appreciably reduced in value by the administrative costs entailed in giving notice "cause" may be found to exist for sale without notice. Similarly, if an advantageous sale will be lost or the property to be sold will substantially depreciate in value during the notice period, "cause" may be found to be shown and the notice period accordingly shortened or dispensed with entirely. Cf. In re Fee Bros., Inc., D.C.W.D.N.Y.1941, 36 F. Supp. 995, 997, affirmed sub nom. Hover v. Genesee Valley Trust Co., 2 Cir., 1941, 123 F.2d 813. But there is no warrant, either in the language of the Act or in the policy underlying it, for dispensing with or modifying the notice requirements of § 58, sub. a(4) solely for reasons of convenience. In each case the "cause" for shortening the time or dispensing with notice must outweigh the considerations of reason and policy which always argue for the normal notice specified in the Act.

■ In all events, before the notice requirements of the Act may be either shortened in time or, a fortiori, dispensed with entirely, the proviso to § 58, sub. a(4) contemplates that an advance finding of "cause shown" will be made, and an order entered thereon before the sale and not afterwards. While in exceptional circumstances a nunc pro tunc order might be permissible, no such circumstances appear here. So there is no basis in reason or policy for holding that the ex post facto order confirming sale in the proceedings at bar is tanta-

mount to a nunc pro tunc order for "immediate sale without notice."

Moreover, nothing in the record under review shows that "cause" existed either before or afterwards for dispensing with the requisite notice of sale. The bankrupt estate is small and the creditors are not numerous. Notice to all might have been given at slight cost and without significant expenditure of time. Neither does it appear that any purchaser would have been unwilling to wait for "at least ten days' notice by mail" to be given, nor that a less advantageous sale would likely have resulted.

■ Respondent nonetheless contends that in substance and fairness the sale at bar was financially a "good sale" of benefit to the bankrupt estate and that the no-notice objection here urged is purely technical. This argument overlooks a primary justification for the notice requirement, namely, that fraudulent, collusive or improvident sales at inadequate prices can only rarely and with great difficulty be proved in an action brought after the sale has been consummated, as experience amply attests. 6 Remington on Bankruptcy, supra, § 2539. Compliance with § 58, sub. a(4) serves to avoid such difficulties by assuring that creditors are informed in advance of proposed sales and so given full opportunity to appear and protect their own interests beforehand, either by bidding themselves, or by securing bids for the property to be sold, at prices commensurate with value.

For failure of compliance with § 58, sub. a(4) of the Bankruptcy Act, the Referee's order of January 19, 1959, confirming sale of the inventory of the bankrupt water-service company must be reversed and the sale in question set aside [Butler v. Ellis, supra, 45 F.2d 951; Allgair v. William F. Fisher & Co., 3 Cir., 1906, 143 F. 962; cf. In re Galouzis, supra, 10 F.Supp. 284; and see 3 Collier on Bankruptcy, supra, § 58.09 at 494]; and the matter will be recommitted to the Referee for further proceedings not inconsistent with this opinion.

It is so ordered.