**In re INTERNATIONAL POWER SECURI-
TIES CORP.**

No. 1602a.

United States District Court
D. New Jersey.

April 24, 1953.

---

John J. Murphy, trustee, Milton, McNulty & Augelli, Jersey City, N. J., for trustee.

Scribner & Miller, New York City, Morrison, Lloyd & Griggs, Hackensack, N. J., for Bondholders Committee, Series E.

Toner, Crowley & Ackerman, Newark, N. J., Phipps, Durgin & Cook, Boston, Mass., for Bondholders Committee, Series C.

Charles W. Lavers, Boston, Mass., W. Ludlow James, Montclair, N. J., for Bondholders Committee, Series F.

Harold P. Seligson, New York City, for Preferred Stockholders Committee.

Morris Turetzky, Monticello, N. Y., for Preferred Stockholders Committee, Special.

Burke, Sheridan & Hourigan, Union City, N. J., for debtor.

SMITH, District Judge.

This is a corporate reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The matter is before the Court at this time on the petitions for allowances filed herein pursuant to sections 241 and 242 of the Act, 11 U.S.C.A. §§ 641 and 642. There are twenty-seven separate petitions for allowances, most of them voluminous, and therefore a detailed discussion of the claims for compensation would seem impractical. However, a brief discussion of the principles by which we have been guided in the evaluation of the services rendered by the petitioners seems appropriate.

■ The representatives of the Securities and Exchange Commission have given careful consideration to the petitions for allowances and have submitted their report thereon in open court. Their recommendations were of assistance to the Court in the evaluation of the services rendered by the respective petitioners, and we have therefore accorded these recommendations the weight to which they are entitled under the law. Finn v. Childs Co., 2 Cir., 181 F.2d 431, 437 et seq; In re Philadelphia & Reading Coal & Iron Co., D.C., 61 F.Supp. 120, 124; See also In re Midland United Co., D.C., 64 F.Supp. 399. We are fully aware that these recommendations are not conclusive, but it is our opinion that they should be given great weight, especially where, as here, their report indicates a careful study of the petitions for allowances and a reasonable evaluation of the services rendered by the respective petitioners. Ibid.

The necessary and reasonable limits of this opinion will not permit an adequate recital of the long history of the proceedings or a complete discussion of the many problems attendant upon the formulation of an equitable and feasible plan of reorganization. There were more than 800 petitions, orders, reports, proofs of service, and other documents filed in the proceedings. The hearings on the plan of reorganization, and the amendments thereto, consumed many days and resulted in a record of approximately 2,000 pages. The problems presented were numerous and at times were very complex.

When these proceedings were initiated the principal assets of the debtor were: three mortgages on the utility properties of Societa Edison of Milan, Italy, hereinafter identified as the Edison Company; domestic securities of the approximate value of $1,800,000; shares of stock in the

Edison Company; and a small amount of cash. The mortgages were held by the Bankers Trust Company, the indenture trustee, as security for three separate bond issues. The Edison Company defaulted on the mortgages and as a consequence the debtor was unable to meet the payments due on the outstanding bonds, which represented the principal indebtedness of the debtor, except for its indebtedness on preferred stock.

The laws enacted by the Empire of Italy, and thereafter by the Republic of Italy, to protect its economy during the war and thereafter, necessarily prevented not only the remittances of payments due on the mortgages but also the submission of an equitable proposal of settlement essential to the formulation of a plan of reorganization. The situation was further complicated by certain of the regulations necessarily adopted by our Department of State. When these difficulties were overcome the Edison Company and the Italian Public Utility Credit Institute submitted a joint proposal of settlement upon which the amended plan of reorganization was based. This plan of reorganization was approved by the Court as fair, equitable and feasible, after extensive hearings, and was later confirmed.

These proceedings were initiated on February 24, 1941, and except for matters incidental to the consummation of the plan of reorganization, were concluded by the confirmation of an equitable and feasible plan of reorganization on June 28, 1951. This long delay, which was unavoidable, was not detrimental to the estate and ultimately proved advantageous not only to the estate but also to the bondholders and preferred stockholders. The advantages may be briefly summarized as follows: first, the realization of income on the domestic securities; second, the sale of these securities when the market was most favorable; third, the realization of income on investments in government bonds; and fourth, the approval and adoption, after the termination of hostilities, of a more favorable proposal of settlement. The estate was efficiently and competently administered and the proceedings were concededly successful.

It should be observed that prospective plans of reorganization which were suggested and considered earlier in the proceedings were abandoned because it appeared that they could not have been effected without great sacrifice, particularly of the interests of the preferred stockholders. The delay therefore contributed to the ultimate achievement of a more equitable result.

### Applications for Allowances under Section 241 of the Act.

The petitions for allowances filed herein by the trustee, attorneys for the trustee, attorneys for the debtor, and special attorneys engaged by the trustee with permission of the Court, are governed by section 241 of the Act, 11 U.S.C.A. § 641. These petitioners are entitled to "reasonable compensation for services rendered" and, therefore, in an endeavor to fairly evaluate their services we have considered the following factors: the nature and extent of the services rendered; the complexities of the many problems presented; the consequent responsibility undertaken; the experience required and the degree of proficiency exercised; and the time necessarily consumed by the respective petitioners in the discharge of their duties. Cf. Newman v. Ambassador Apartments, 3 Cir., 101 F.2d 307; Steere v. Baldwin Locomotive Works, 3 Cir., 98 F.2d 889, and other cases hereinafter cited. We have given consideration also to the ability of the debtor to meet the claims for compensation.

### Attorneys for Debtor.

Burke, Sheridan and Hourigan, attorneys for the debtor, have requested an allowance of $750 and reimbursement for costs in the amount of $100. This request is fair and reasonable, and the Securities and Exchange Commission has recommended that it be granted. These petitioners will therefore be granted an allowance of $750 and reimbursement for costs in the amount of $100.

### Trustee.

■■ John J. Murphy, the trustee, has requested an allowance of $175,000, which includes the ad interim allowances heretofore granted. This petitioner administered the estate efficiently and with competence, and he actively participated in the formulation of an acceptable plan of reorganization. His administration of the portfolio of domestic securities required competence and a knowledge of market conditions, and it cannot be doubted that his advice was of assistance to the Court and beneficial not only to the estate but also to the security holders.

However, many of his duties were routine, to wit: the preparation of financial reports, income tax returns, etc.; the publication and distribution of reports, notices, etc.; the supervision of ad interim payments to bondholders; the supervision of extensive correspondence; and his attendance at the many hearing and conferences. There were times when even these routine tasks were not too burdensome, particularly during the years of the war and for a short time thereafter, when the proceedings were comparatively and unavoidably inactive.

It is our opinion that the fair and reasonable value of the services rendered and to be rendered by the Trustee is $84,000, and therefore an allowance in said amount will be granted. We are fully aware that a competent executive would well command higher compensation in private business, but it must be remembered that a trustee serves in a quasi public capacity and he cannot expect to be compensated on the same basis. The allowance here made the Trustee is intended to include the ad interim payments heretofore made to him.

### Attorneys for Trustee.

■ Milton, McNulty and Augelli, attorneys for the trustee, have requested an allowance of $200,000, which includes the ad interim allowances heretofore granted. These petitioners represented the trustee since March 6, 1941, and the nature and extent of the services rendered are specified in a schedule of 172 pages annexed to their printed petition. Their services were of the nature usually rendered by the attorney for the debtor in proceedings of this character, and they included: extensive inquiry into the affairs of the debtor; the preparation of numerous pleadings, orders, notices and other documents; the preparation and trial of litigation; participation in the preliminary negotiations with the representatives of the Italian Public Utility Credit Institute and the Edison Company, both here and in Italy; participation in many conferences with the representatives of security holders and others in New York, Boston and Washington; attendance at and participation in numerous hearings, including the hearings on the plan of reorganization; extensive research relevant to the many problems which arose both during the course of administration and in the formulation of the plan of reorganization; and, an active participation in the formulation of the plan of reorganization which was ultimately approved and confirmed.

The petition discloses that more than 7,000 hours were expended by senior partners of the firm and their associates; of these hours two-thirds are allocated to services performed by partners, and one-third to services performed by associates. We would ordinarily regard as excessive and unnecessary much of the time expended by senior partners, but we recognize that in this proceeding there were many unusual and complicated problems which, in our opinion, required their personal attention.

It is our opinion that the fair and reasonable value of the services rendered and to be rendered by the attorneys for the trustee is $150,000, and that costs incurred in the amount of $1,960 are properly reimbursable. The petitioners will therefore be allowed said amounts. The allowance here made is intended to include the ad interim payments heretofore made the petitioners. This allonwance is consistent with the recommendation of the Securities and Exchange Commission.

### Special Attorneys.

■ Goodwin, Rosenbaum and Meacham, special attorneys for the trustee, were engaged to make a study of certain tax problems and to advise the trustee and the court thereon. Their services included

the study and analysis of the proposed plan of reorganization and the tax problems consequent upon its adoption; the preparation of an opinion limited to the tax problems; the initiation of necessary proceedings before the Commissioner of Internal Revenue; and conferences with the attorney for the trustee and others.

There is no real dispute as to the value of the services rendered by these petitioners although their claim for compensation is in excess of that recommended by the Securities and Exchange Commission. They have, however, acquiesced in the said recommendation. The fair and reasonable value of the services rendered by these petitioners is $9,000, and the cost incurred in the amount of $500 are properly reimbursable. An allowance in the total of these amounts will therefore be granted.

■ Angelo P. Serini, special attorney for the trustee, was engaged to make a study of the Italian law. This petitioner is a competent lawyer who has a comprehensive knowledge of both Italian and local law. His services included the study and analysis of the proposal of settlement and other documents; the study and analysis of the proposed plan of reorganization in the light of the Italian law; the preparation of memoranda; the preparation of legal documents essential to the consummation of the plan of reorganization; and participation in several conferences.

A fair appraisal of the value of his services requires a consideration of his competence and unusual ability; if we were to evaluate his services solely on the basis of time expended, his compensation would be clearly inadequate. The fair and reasonable value of the services rendered by this petitioner is $12,500, and the necessary costs incurred in the amount of $76.97 are properly reimbursable. An allowance in the total of these amounts will therefore be granted.

■ Serafino C. Irelli, an attorney in Italy, was specially appointed by the Court to aid the trustee in the consummation of the plan of reorganization. He acted as agent of the trustee, and his duties were ministerial in nature. The fair and reasonable value of the services rendered by him is $1,000, and the necessary costs incurred in the amount of $31 are properly reimburable. An allowance in the total of these amounts will be granted this applicant.

### Attorney for Indenture Trustee and Exchange Agent.

■ Engel, Judge, Miller and Sterling have requested an allowance of $4,500 for special services rendered the Colonial Trust Company, indenture trustee and exchange agent under the plan of reorganization. These attorneys were engaged, with the permission of the Court, to perform certain services which were admittedly not contemplated at the time the Colonial Trust Company was appointed, and it is here conceded that they are entitled to reasonable compensation for these services. The Securities and Exchange Commission has recommended an allowance of $2,000, which in our opinion represents fair and reasonable compensation. These petitioners have also asserted a claim for costs in the amount of $1,392.26; these costs are not disputed and are properly reimbursable. An allowance in the total of these amounts will therefore be granted.

### Applications for Allowances Under Section 242 of the Act.

■ The petition for allowances filed herein by the committees of bondholders and stockholders, and their attorneys, are governed by Section 242 of the Act, 11 U.S.C.A. § 642. The pertinent provisions of this section read as follows:

"The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in connection with the administration of an estate in a proceeding under this chapter or in connection with a plan approved by the judge, whether or not accepted by creditors and stockholders or finally confirmed by the judge—

"(1) by * * * committees or representatives of creditors or stockholders;

"(2) * * *; and

"(3) by the attorneys or agents for any of the foregoing except the Securities and Exchange Commission."

This section not only authorizes reasonable compensation to the parties therein named but also defines the *nature of the services* for which such compensation may be allowed.

The provisions of section 242 are fully discussed in Collier on Bankruptcy, 14th Ed., Vol. 6, pages 4532 et seq. It is therein stated, at pages 4532 and 4533: "Section 242, as its contents show, vests the reorganization judge with the power, in his discretion, to make allowances to the various representatives of creditors and stockholders, to any parties in interest—except the Securities and Exchange Commission—and to their respective counsel and agents. These allowances, in the terms of the statute, may include 'reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred' in two separate situations: (1) 'in connection with the administration of an estate in a proceeding under this chapter'; or (2) 'in connection with a plan approved by the judge, whether or not accepted by creditors and stockholders or finally confirmed by the judge.' If the claimant, upon whom rests the burden of proof, fails to bring himself within the scope of these categories, then an allowance must be denied."

This construction of the statutory provisions is supported by many reported decisions: In re McGann Mfg. Co., 3 Cir., 188 F.2d 110, 112; In re Postal Telegraph & Cable Corporation, 2 Cir., 119 F.2d 861, 862; See also Finn v. Childs Co., supra; In re Mt. Forest Fur Farms of America, 6 Cir., 157 F.2d 640; Gochenour v. Cleveland Terminals Bldg. Co., 6 Cir., 142 F.2d 991; In re Standard Gas & Electric Co., 3 Cir., 106 F.2d 215; Steere v. Baldwin Locomotive Works, 3 Cir., 98 F.2d 889. It seems reasonably well established that mere participation in the proceedings does not create a right to compensation under the statute in the absence of some direct benefit to the estate. Ibid.

There is an additional factor to which we have given consideration in our appraisal of the respective claims for compensation, to wit, the extent to which there has been an avoidable duplication of services. There were six separate committees, each of which was represented by counsel of its own selection. Three of these committees and their counsel rendered valuable services, but in our opinion their petitions for allowances disclose an avoidable duplication of work, particularly in those instances in which there was no substantial conflict of interest. The burden of the expense thus incurred should not be cast upon the estate of the distressed Debtor. Finn v. Childs Co., supra, 436; Newman & Bisco v. Realty Associates Securities Corp., 2 Cir., 173 F.2d 609, 611; In re Porto Rican American Tobacco Co., 2 Cir., 117 F.2d 599. The estate cannot be required to pay double compensation merely because similar services were rendered by the committees and their counsel; it is their duty to avoid the unnecessary duplication of services so as to contribute to the economy of administration contemplated by the Act. Ibid.

We first direct our attention to the petitions for allowances filed herein by the attorneys for each of the committees. The claims for compensation therein asserted appear to be based upon not only the services rendered in connection with the administration of the estate and the plan of reorganization but also upon services rendered solely to the committees. We fully realize that it is frequently difficult, as it is in this proceeding, to draw a distinct line of demarcation, but we have nevertheless endeavored to evaluate the services rendered by the respective petitioners in the light of the statutory provisions as construed by the courts.

Attorneys for Bondholders' Committee, Series E.

Scribner and Miller, attorneys for the said Committee, have requested an allowance of $175,000. These petitioners represented the Committee since April 10, 1941, and have been active in the proceedings since that time. There can be no doubt that they rendered valuable services in connection with the administration of the estate and the plan of reorganization.

The Securities and Exchange Commission has recommended an allowance of $80,000 and the petitioners have interposed no objection to this recommendation.

The petitioners were very active in the proceedings, and their efforts on behalf of the estate and in the formulation of the plan of reorganization were most constructive. Their services included: participation in the initial inquiry into the affairs of the debtor; exploration of prospective plans of reorganization; the proposal of earlier plans of reorganization, which were abandoned; participation in litigation, which included the successful prosecution of an appeal from an order of this Court; effective opposition to the initial proposal of settlement submitted by the Edison Company; participation in negotiations which ultimately led to the submission of a more favorable proposal of settlement and the formulation of a sound plan of reorganization; participation in the hearings on the original plan of reorganization, and this included the presentation of amendments which were adopted; and assistance to the attorney for the trustee in the preparation of documents necessary to the consummation of the plan of reorganization.

The recommendation of the Securities and Exchange Commission is obviously based upon a careful study and evaluation of the services rendered by the petitioners in connection with the administration of the estate and the formulation of the plan of reorganization, and we are therefore inclined to adopt it. These petitioners will therefore be granted an allowance of $80,000, which in our opinion is fair and reasonable compensation for the services rendered.

▉ Morrison, Lloyd and Griggs, members of the bar of this court, acted as local counsel for the said Committee. Their services were necessarily limited and were of the nature usually rendered by local counsel. Their work was of a routine character and was limited to the assistance given to Scribner and Miller. The Securities and Exchange Commission has recommended an allowance of $5,000, which is, in our opinion, fair and reasonable compensation for the services rendered. An allowance in the said amount will therefore be granted.

▉ Paul E. Kern and Morris F. Goldstein represented individual bondholders whose interests in these proceedings were represented by the Committee and its attorneys Scribner and Miller. The petition for allowance filed herein by Scribner and Miller states that Mr. Kern and Mr. Goldstein rendered some service to the Committee, but this Court is not aware of any service they rendered in connection with the administration of the estate or the plan of reorganization. It is our opinion that under these circumstances no allowance can be made to either Mr. Kern or Mr. Goldstein.

Attorneys for Bondholders' Committee, Series C.

▉ The said Committee was represented in these proceedings by Phipps, Durgin and Cook, of Boston, and Toner, Crowley and Ackerman, of Newark. These attorneys have requested a joint allowance of $65,000 for services rendered since August 1, 1941. The Securities and Exchange Commission has recommended an allowance of $30,000.

These petitioners were active in the proceedings and their services, although not as extensive as those of Scribner and Miller, were beneficial to the estate. Their services included: study of the pending proceedings and the affairs of the debtor; participation in efforts to formulate a plan of reorganization, which included the submission of suggestions to the Series E Committee; conferences with representatives of bondholders and preferred stockholders, and others; effective opposition to the proposal of the Bankers Trust Company, the indenture trustee; participation in the negotiations which ultimately led to the submission of a more favorable proposal of settlement by the Italian Public Utility Credit Institute and the Edison Company; active participation in the hearings on the plan of reorganization; and support of the amended plan of reorganization.

These petitioners will be granted an allowance of $30,000, which in our opinion is fair and reasonable compensation for the

services rendered, and reimbursable costs in the amount of $1,777.88.

### Attorney for Bondholders' Committee, Series F.

█ This petitioner, Charles W. Lavers, has requested an allowance of $25,000 for services rendered. He entered his appearance in the proceedings on May 13, 1947, and it appears from the statement filed by him, pursuant to section 210 of the Act, 11 U.S.C.A. § 610, that he represented twelve bondholders. The petition for an allowance is meager and discloses no service in connection with either the administration of the estate or the plan of reorganization. The petitioner appeared at many of the hearings which were held, and it may be said that he participated in the proceedings, but this participation did not create a right to compensation, particularly in the absence of evidence that the services rendered "contributed directly and materially" to either the administration of the estate or the formulation of the plan of reorganization. The petition for an allowance will therefore be denied.

We believe it pertinent to observe that this Committee was organized by two bondholders, Arthur J. April and Lawrence A. Barrufoldi, and was obviously self-constituted; these bondholders met and elected themselves to the committee. We deem it unnecessary to discuss the activities of this committee except to note: first, it rendered no service to the estate; second, it was apparently dissolved by the resignation of its members; and third, its members were guilty of conduct which would preclude compensation to them under the Act, 11 U.S.C.A. § 649. It should be noted further that the Committee failed to file the statement required by section 211 of the Act, 11 U.S.C.A. § 611.

### Bondholders' Committee, Series E.

█ This Committee was organized on February 4, 1941, before these proceedings were initiated, and thereafter continued to represent the Series E bondholders. The Committee was composed of: Harry R. Amott, president and director of Amott, Baker and Company; Horace Schermerhorn, vice president and trust officer of the National Shawmut Bank of Boston; Francis E. Smith, partner in the firm of Moors and Cabot, of Boston; Stanley Stanger, an officer and director of the Guardian Trust Company of Montreal; and Ralph C. Tees, vice president and secretary of the Guardian Trust Company of Montreal. These members were most competent and contributed their wide experience to the solution of the many problems which confronted the debtor.

The members of this Committee, particularly Mr. Amott and Mr. Stanger, were most active in the proceedings and their work was of direct benefit to the bondholders and the estate of the debtor. Their services necessarily paralleled, at least in some degree, those of their attorneys Scribner and Miller, and included: extensive study and exploration of possible plans of reorganization; study of suggestions and proposals submitted by others; effective opposition to the initial proposal of settlement submitted by the Edison Company; participation in the negotiations which ultimately led to the formulation of a feasible plan of reorganization; participation in conferences and meetings, and in this case they were necessarily numerous; and the usual work performed by an active committee. The members of this Committee also studied and marshaled financial and factual data which was presented at the hearings on the plans of reorganization, and in the opinion of the Court this work was of substantial benefit to the estate.

The members of this Committee have filed a joint petition for allowances in the total amount of $29,954, exclusive of reimbursable costs. The Securities and Exchange Commission has recommended allowances in the total amount of $11,750, exclusive of reimbursable costs. We are of the opinion that the recommendation represents a fair evaluation of the services rendered. We shall therefore grant to the Committee an allowance of $11,750 to be allocated as follows: To Harry R. Amott—$5,000; to Stanley Stanger—$5,000; to Ralph C. Tees—$750; to Horace Schermerhorn—$500; and to Francis E. Smith—$500. This allocation is based upon the nature and the extent of the services.

rendered by the respective members of the committee.

Three members of the Committee, Stanley Stanger, Horace Schermerhorn and Ralph C. Tees, seek reimbursement for costs which they allege were necessarily incurred by them in the discharge of their duties. Reimbursable costs in the amount of $1,272.88 will be allowed Stanley Stanger, and reimbursable costs in the amount of $162 will be allowed Horace Schermerhorn. The claim for costs here made by Ralph C. Tees is included in the allowance to Stanley Stanger, with the consent of the applicants.

 The secretary of the said Committee, Joshua Morrison, filed a separate petition in which he requests an allowance of $10,000. This petitioner served as secretary of the Committee since its organization, except for a period of approximately three years, when he was in the armed services, and he performed the routine secretarial work. His petition would indicate that he also rendered some legal services, but this we must regard as unnecessary duplication of the services rendered by the attorneys for the Committee. It is our opinion that the sum of $2,500 is fair and reasonable compensation for the services rendered by this petitioner, and an allowance in the said amount will therefore be granted.

### Bondholders' Committee, Series C.

 This Committee was composed of William Edmunds, William V. Tripp and James M. Beale, men of competence and experience. The services which they rendered were necessarily limited; in fact, if their services had been more extensive they would have been merely duplicative of the services rendered by the Series E Committee. The sum of $1,500 is in our opinion fair and reasonable compensation for the services rendered by this Committee and an allowance in the said amount will therefore be granted.

 The Secretary of this Committee, William V. Macdonald, filed a separate petition in which he requests an allowance of $7,500. The petition discloses that he performed nothing more than the usual secretarial work, and in our opinion the sum of $1,000 is fair and reasonable compensation for this service. An allowance in the said amount will therefore be granted.

### Attorneys for Preferred Stockholders' Committee.

 This Committee was organized in 1942 and has been represented in these proceedings by W. Ludlow James and Harold P. Seligson, the latter a former member of the law firm of Marshall, Bratter, Seligson and Klein. It should be noted, however, that Mr. Seligson did not enter his appearance in these proceedings until early in 1950, when he became associate counsel. These petitioners have requested an allowance of $75,000 and reimbursement for costs in the amount of $1,293.17.

These petitioners, and particularly Mr. Seligson, rendered valuable services primarily in connection with the final plan of reorganization, the amended plan of reorganization, as distinguished from earlier informal plans, which were abandoned. There services included comprehensive study of the original plan of reorganization filed by the trustee; active participation in the hearings on the said plan and the proposed amendments; effective opposition to several of the provisions of the said plan, and the initial proposal of settlement upon which the plan was predicated; active participation in the final negotiations which ultimately led to the submission of a more favorable proposal of settlement and the formulation of the final plan of reorganization; submission of suggestions and proposed amendments; presentation of evidence at the hearings; and the preparation of legal memoranda in opposition to the original plan of reorganization and in support of the amended plan of reorganization. It should be noted, however, that the services rendered by Mr. James early in the proceedings were routine in their nature and of limited benefit to the estate.

We are of the opinion that the sum of $35,000 is fair and reasonable compensation for the services rendered by these petitioners and we shall therefore grant them an allowance in the said amount, to be allocated as follows: **To W. Ludlow James—**

$10,000, and to Harold P. Seligson—$25,000. The greater allowance is granted Mr. Seligson because in our opinion his competence, experience and constructive efforts contributed more substantially than did the earlier work of Mr. James to the result achieved. The assignment of this reason, however, is not to be construed as a criticism of the services rendered by Mr. James, but solely as a recognition of the competence and wider experience of Mr. Seligson, which were most valuable. These petitioners will be allowed their reimbursable costs in the amount of $1,271.71.

### Preferred Stockholders' Committee.

██ This Committee was composed of Frank M. White, who acted as chairman, and Frank P. Adams, who acted as secretary. They have requested an allowance of $5,000 and reimbursement for costs in the amount of $178.75. This Committee was not active, and the services rendered by its members were routine. The Securities and Exchange Commission has recommended an allowance of $1,500 and reimbursement for costs in the amount of $178.75. This recommendation will be adopted.

### Attorney for Committee of Preferred Stockholders, Special.

██ This petitioner, Morris Turetzky, has requested an allowance of $5,740 and reimbursement for costs in the amount of $425. These requests are clearly excessive. We are not aware of any services that the petitioner has rendered in connection with the plan of reorganization and the petition for an allowance discloses none; in fact, the claim for compensation appears to be predicated solely upon the petitioner's participation in the proceedings and the services rendered his client. The costs for which he seeks reimbursement are not itemized and appear to consist solely of ordinary office expenses, to wit, postage, telephone service and travelling expenses.

This Committee was organized late in 1949 by a small group of preferred stockholders, who held approximately 4,500 shares of preferred stock. The statement filed pursuant to section 211 of the Act, 11 U.S.C.A. § 611, discloses that the Committee was organized at the request of the present petitioner, who at that time held 500 shares of preferred stock. We are of the opinion that the organization of this Committee was ill-advised and the responsibility for it must fall on the shoulders of the present petitioner.

This petitioner entered his appearance in these proceedings on February 1, 1950, and at that time the preferred stockholders were adequately represented by an active committee. There was no substantial conflict of interest among the preferred stockholders, and it therefore should have been obvious to the petitioner that the services to be rendered by him, except to his client, would be duplicative and unnecessary. We fully realize that the provisions of the Act were designed to encourage creditor participation, but it does not follow that the entire expense of this participation is to be borne by the estate of the distressed debtor. The right to compensation is limited, as hereinabove stated, by the express statutory provisions.

We are of the opinion that the petitioner has failed to sustain the burden of proof cast upon him by the Act; therefore, his petition for an allowance and reimbursement for costs must be denied.

### Attorney for Common Stockholders' Committee.

██ This petitioner, John D. Craven, has requested an allowance of $40,000 and reimbursement for costs in the amount of $197.58. The request for an allowance in the said amount is grossly excessive and this is frankly admitted by the petitioner. However, the petitioner's participation in the proceedings, particularly in the hearings on the plan of reorganization, ultimately proved beneficial to the estate of the debtor. We are of the opinion that the sum of $2,500 is fair and reasonable compensation for the limited services rendered by him, and an allowance in the said amount will be granted. His costs in the amount of $137.58 are properly reimbursable, and he will be allowed reimbursement in this amount.

Common Stockholders' Committee.

■ This Committee, which was organized in October 1949, was composed of Edward I. Anfindsen, Paul Sicuro and Andrew Spring. They have requested an allowance of $20,000, which is likewise grossly excessive. They rendered nothing more than the usual routine service, and in our opinion they are entitled to nothing more than nominal compensation, to wit, $500. This Committee will therefore be granted an allowance of $500 and reimbursement for costs in the amount of $195.27.

Expert Witnesses.

■ W. C. Gilman and Company, professional engineers and security analysts, retained by the trustee, have requested an allowance of $4,400 for special services. Their services included: study and evaluation of domestic securities held by the trustee: survey of the physical conditions and operations of the mortgaged properties, as reflected in reports submitted by the Edison Company; study and evaluation of financial data submitted by the Edison Company; conferences with representatives of the Edison Company and others; compilation of data and preparation of reports, and attendance at hearings before this Court. It is conceded that these services were necessary.

The Securities and Exchange Commission has recommended an allowance of $1,750 and in this recommendation has given proper consideration to the allowances heretofore granted the petitioner. This recommendation will be followed and the petitioner will be granted an allowance of $1,750 and reimbursement for costs in the amount of $3.10.

■ Dr. Max Winkler, a competent economist and security analyst retained by the Bondholders' Committee, Series E, has requested an allowance of $3,500 for services rendered the Committee and in connection with the plan of reorganization. This request is embodied in the petition for allowances filed herein by the Committee, and it would appear therefrom that his claim for compensation is based upon services rendered since January 31, 1946.

It should be noted that prior to that time the petitioner was a member of the Committee but resigned when he sold his bonds. There is no evidence that he traded in the securities of the debtor thereafter.

It is our opinion that the petitioner is entitled to compensation but only for the services rendered in connection with the plan of reorganization. There can be no doubt that these services were of direct benefit to the estate; the petitioner is an experienced analyst and his testimony at the hearings was informative and helpful. The petitioner will be granted an allowance of $750, which in our opinion is fair and reasonable compensation for the services rendered.

■ Angelo P. Serini, special attorney for the trustee, was retained by the Preferred Stockholders' Committee in February of 1950, and thereafter rendered special legal services for which compensation is here requested. It should be noted that he was not retained by the trustee until July of 1951, when it was determined that there was a need for the services of a lawyer of his competence and experience. It seems unnecessary to again summarize the nature of the services rendered by this petitioner, but it should be observed that his services to the Committee were advisory and necessarily limited; the services rendered the trustee were more comprehensive.

It is our opinion that the fair and reasonable value of the services rendered by this petitioner is $2,000, and that the necessary costs incurred, in the amount of $27.60, are properly reimbursable. The petitioner will therefore be granted an allowance in the total of these amounts.

■ Irving H. Isaacs, a competent economist and security analyst, was retained by the Preferred Stockholders' Committee and testified in these proceedings. There is some difference of opinion as to the value of his testimony, but it is generally conceded that he rendered a beneficial service in connection with the plan of reorganization. This petitioner will be granted an allowance of $750, which in our opinion is fair and reasonable compensation for the service rendered.

■ Albert W. Kimber, a competent security analyst, was retained by the Preferred Stockholders' Committee and testified in these proceedings. The service which he rendered was comparable to the service rendered by Mr. Isaacs. This petitioner will be granted an allowance of $500 and reimbursement for costs in the amount of $199.40.

[37] Herbert E. Broadfoot, who testified in these proceedings on behalf of the Preferred Stockholders' Committee, has requested an allowance of $1,000 for services rendered. It was obvious from his testimony that he possessed neither the competence nor the experience necessary to qualify him as an expert witness. It is our opinion that he rendered no service in connection with the plan of reorganization and his petition for an allowance will therefore be denied.

■ Fairfield S. Perry, an employee of the Chase National Bank, has requested an allowance of $2,250 for services rendered the Preferred Stockholders' Committee. We are willing to assume that he rendered the services summarized in his petition for an allowance, but these services, insofar as we have been able to ascertain, were not in connection with the plan of reorganization; in fact, we had no knowledge of Mr. Perry's interest in the proceedings until he filed his petition for an allowance. The mere fact that this petitioner rendered services beneficial to the Committee will not support his claim for compensation against the estate of the debtor. The petition for an allowance will be denied.

### Miscellaneous.

■ A petition for an allowance has been filed herein by one Florence Pfeil, the widow and assignee of George Pfeil; she requests an allowance of $500. It appears from the said petition that George Pfeil, an attorney at law of New York, assisted the Preferred Stockholders' Committee and its attorney, W. Ludlow James, in 1941, 1942 and 1943; the services he rendered, however, were advisory in nature and limited. The petitioner will be granted a nominal allowance of $250.

This allowance is consistent with the recommendation of the Securities and Exchange Commission.

The petitions for allowances filed herein by Bankers Trust Company, indenture trustee, and White and Case, its attorneys, will be made the subject of a separate memorandum.