Matter of **DELAWARE STEEL FABRI-
CATING CORP.**

No. 1574.

United States District Court
D. Delaware.

May 23. 1956.

Newton White, Asst. U. S. Atty., of Wilmington, Del., Samuel Cohen, William J. Hagan and Raymond F. Brown, Washington, D. C., for the United States.

James P. Collins (of Healy & Collins), Wilmington, Del., bankruptcy Receiver and Trustee in reorganization.

S. Samuel Arsht (of Morris, Steel, Nichols & Arsht), Wilmington, Del., for James P. Collins.

Charles Green and Samuel Marx, Philadelphia, Pa., for petitioning creditors.

Aubrey B. Lank (of Logan, Marvel, Boggs & Theisen), Wilmington, Del., for Delaware Steel Fabricating Corp., debtor.

LEAHY, Chief Judge.

In this proceeding for the reorganization of Delaware Steel Fabricating Corp., the United States, as one of the main creditors, objects to all requests for attorneys' fees and a trustee's fees.

1. *Aubrey B. Lank, Esq.* This is the attorney for the debtor. He seeks $5,000. At the time he was retained, the debtor was in bankruptcy. Both debtor and the trustee were re-negotiating a certain lease with the Navy Department. Advisability of attempting a reorganization under Chapter X, 11 U.S.C.A. § 501 et seq., was worked out. It is unnecessary to recite in detail the work of the debtor's attorney in the reorganization.

Under Chapter X, § 241 of the Bankruptcy Act, it is within the discretion of the Judge to allow reasonable compensation for the debtor's attorney. A review of the work done by the attorney fails to support an allowance of $5,000. Based upon the time spent on the affairs of the debtor during the entire period of reorganization, as indicated by the petition for allowances, applicant spent approximately 30 days in services. An allowance of $2,000 is more than liberal. Such an allowance will be made.

■ 2. *Samuel Marx, Esq. and Charles Green, Esq.* These are the attorneys who represented the petitioning creditors who originated these proceedings. Both ask for a total of $1,500 between them and $47.50 for expenses.

The government objects to any allowance whatsoever. These attorneys not only represented the original petitioning creditors but also a number of other creditors. They appeared before the Court on a number of occasions both in Chambers and the Court Room. As to the present application, when the size of the estate is considered, the services performed, the benefit to the estate, and the decided cases, the allowances will be as noted in the following Order as of $1,000 between them plus the requested expenses.

■ 3. *James P. Collins, Esq., Trustee and S. Samuel Arsht, Esq., his counsel.* In approaching these claimants certain judicial principles are recognized. For example, fees granted must bear a reasonable relation to the estate's value.[1] As officers of the Court, their compensation is not to be as large as the compensation of attorneys engaged in private employment.[2] This Court in In re National Department Stores, D.C.Del., 11 F.Supp. 633, 638, per Nields, J., said: "In reality, receivers and attorneys are officers of the court. As public servants, their compensation should never be as large as the compensation of those engaged in private employment. By such considerations, debtors may be relieved and creditors and stockholders served."

■■ Section 241 of the Bankruptcy Act provides the Judge may allow "reasonable compensation for services rendered" in reorganization to a trustee and his counsel. What this represents in any case depends upon the facts. Amounts considered 10 to 20 years ago as "reasonable compensation" by the cases do not control in 1956. The task is difficult and no mathematical formula gives the answer. The government thinks the Collins and Arsht requests are too high and cites cases in support of this view. But, other cases might be cited which would indicate the compensation requested is too low.[3] The government does not challenge the character and quality of the services rendered.

What the trustee and his attorney did must be examined under the facts of accomplishment here. For example, if Arsht had obtained for a private client a retroactive reduction of rent from $200,000 to $60,000 a year, for a 5 year lease and an option to renew for another 5 years, a fee of $60,000 for such legal service would be reasonable where, as here, it was necessary to convince the lower and higher echelons of the United States Navy that such reduction was proper—first from the first naval legal officer and then secondly to persuade the Assistant Secretary of the Navy to reverse his own view of the matter. The cited example is merely one of many

1. Finn v. Childs Co., 2 Cir., 181 F.2d 431.

2. In re Standard Gas & Electric Co., 3 Cir., 106 F.2d 215; In re Arcturus Radio Tube Co., D.C.N.J., 35 F.Supp. 783; In re Mt. Forest Fur Farms of America, Inc., 6 Cir., 157 F.2d 640; London v. Snyder, 8 Cir., 163 F.2d 621; In re International Power Securities Corp., D.C. N.J., 112 F.Supp. 46.

3. For example, In re Star Electric Motor Co., D.C.N.J., 67 F.Supp. 58, compensation of $50,000 to the Trustee and $45,000 to his attorney in reorganization was allowed for the period of reorganization, which was 4½ months. These allowances were made 10 years ago when lower price levels prevailed.

where both trustee and attorney worked their way through a maze of legal commitments to satisfactory conclusions.

To test the present applications, I go to the nearest analogy. Reasonableness of compensation is fixed by § 48, sub. a(3) of the Bankruptcy Act, 11 U.S.C.A. § 76, sub. a(3), where an operating receiver may be allowed 2% upon the moneys disbursed or turned over to him. Under this statutory formula (designed by Congress), if Collins had functioned as a bankruptcy receiver rather than a trustee in reorganization he would get $36,836.10.[4] As trustee his duties and accomplishments were more varied and successful than if he had functioned as a mere bankruptcy receiver. His application is for $40,000. Arsht, his attorney, asks for $60,000.

This is one case where the Court lived close to the reorganization. Throughout the whole period of litigation—from transfer of state equity receivership, to federal traditional bankruptcy, to federal reorganization under the Act—both Trustee and his counsel conferred, at least, bi-weekly with the Court. The debtor corporation was highly volatile as to its asset position. Creditors' claims inundated the corporate enterprise. The road of progress was rough. The storms were severe. Several occasions presented the inevitable: that was orthodox bankruptcy liquidation with resultant monetary sacrifice to everyone. But, the reorganization was finally completed—not a dramatic legal victory to go down in the books. Yet, a competent job done well and with skill and patience. Each of the participants will be made, by this Court, to contribute each his share to the totality of the endeavor. Everyone has had something taken from his request for full allowance. So: both trustee and his attorney are asked to go along and accept the diminution of their requests. To trustee: $35,000; to attorney: $50,000.

4. Total cash disbursements for period March 29, 1955 to April 17, 1956 .......................................... $1,236,324.00
Assets turned over by trustee to reorganized company at reorganization plan values ............................... 543,481.00
Cash retained by trustee pending settlement of Langenfelder-Allied Steel dispute ...................................... 62,000.00